THE CITY OF ALTON, Plaintiff in Error, v. THE COUNTY OF MADISON, Defendant in Error.

### ERROR TO MADISON.

Section Six, Chapter 50, of Revised Statutes, is not to be construed to include insane persons having adequate means of support.

An insane person having property adequate to his support, is not a pauper, and the county is not liable for the support of such person, nor is the city in which he resides liable for his support.

Where the city of Alton voluntarily supported an insane person possessed or means adequate to that purpose: Held, that as no legal obligation rested on the city or county for the maintenance of such person, there could be no implied promise by the county to repay the city for such support.

THIS was an action of assumpsit, brought by the city of Alton against the county of Madison, to recover the sum of five hundred dollars, for the support and maintenance of one Constantine Shook, an insane person residing in the city of Alton, but owning property in her own right. The defendant demurred to the declaration, and a judgment *pro forma* was rendered by the court below sustaining the demurrer, and the case is brought to this court, and by agreement of parties, the following points are submitted for the decision of this court, viz:

Was the city of Alton bound to take care and provide for the said Constantine Shook, an insane person having property, before she was declared insane by the proper authorities, or is the county of Madison bound to take care of and provide for her before she was declared insane as aforesaid?

Is the said city of Alton bound to take care and provide for said Shook, she being a person having property, after she has been declared insane, according to law, or is the county of Madison bound to take care and provide for her?

LEVI DAVIS, for Plaintiff in Error.

J. AND D. GILLESPIE, for Defendant in Error.

WALKER, J. In determining whether the city or county are liable for the support of insane persons having means of support, it will be proper to refer to the provisions of several legislative enactments. The liability of both the city and county to support paupers, is imposed alone by statute, and to such enactments we must look for its existence. The 9th section of the act incorporating the city of Alton, (Laws Spec. Sess., 1837, p. 21,) provides, " That the common council shall provide for, and take care of, all paupers within the limits of the city, and to accomplish this object, they shall have the exclusive right, power and authority to license and tax all ferries, taverns, mer-

chants, auctioneers, pedlars, grocers, venders of spirituous liquors and wines, other public houses of entertainment, theatrical and other performances, within the limits of said city." And the 1st section of chapter 80, R. S. 402, define paupers to be " Every poor person who shall be unable to earn a livelihood in consequence of any bodily infirmity, idiocy, lunacy, or other unavoidable cause." The same section requires such persons to be supported by certain specified relations, if they have such in any county within this State, who are of sufficient ability. But if they have no such relatives, then the third section provides that " The said pauper shall receive such relief as his or her case may require, out of the county treasury." From these enactments, to become a public charge, the person must be poor, and unable to earn a livelihood by reason of some one of the enumerated causes, and must not have any of the enumerated relatives of sufficient ability for their support. A person having such relatives, or sufficient means for his own support, clearly is not within the provisions of the law; and until such person does come within its provisions, neither the city or county can be held liable for his support.

But it is insisted that the 50th chap. R. S. 276, creates the liability, and we are referred to the 6th section as creating this liability. That section provides that, " The overseers of the poor in every county, shall take charge of the body of any person so insane, lunatic or distracted, and shall have power to confine him or her, and shall comfortably support such person, and shall make out an account thereof and return the same to the County Commissioners' Court, whose duty it shall be to make an order requiring the treasurer of said county to pay the same out of any money in the treasury of said county not otherwise appropriated." The first section of this chapter provides that, " Whenever any. idiot, lunatic or distracted person, has any estate, the judge of the Circuit Court of the county in which such idiot, lunatic or distracted person lives, shall summon a jury to enquire whether such person be lunatic, insane or distracted." And if the jury shall so find, the judge is required to appoint a conservator, who is required to give bond, and take charge of and manage the estate of such person. The fourth section of the same chapter provides that, " It shall be the duty of such conservator to apply the annual income and the profits thereof to the support of such idiot, lunatic or distracted person, his or her family," and " He may sell or dispose of the personal estate to pay his or her debts, or to support him or her, or his or her family, and to educate the children of the same." The seventh section of the same chapter provides that in case such person shall be restored to his or her reason, then what shall remain

of his or her property and estate shall be returned to him or her ; or in case of the death of such person, to his or her heirs, executors or administrators.

While the sixth section of this last named chapter in terms would seem to require all idiots, lunatics and distracted persons to be taken into the custody of the overseers of the poor, and supported as a public charge, we think the other provisions of the chapter clearly manifest that such is not its proper construction.   If such was the design of the legislature, why is the conservator required to apply the income and profits of the estate, and the proceeds of the sale of their personal property to their support and maintenance ?   The provisions of the seventh section also require that what shall remain of his or her estate after his or her support, shall be restored to such person upon restoration to reason, or paid to the heirs, executors or administrators at the death of such person.   We think all these provisions when taken together, and in connection with the provisions of the 80th chapter of the Revised Statutes, clearly manifest, that it was the intention of the legislature to confine the sixth section alone to pauper idiots, lunatics or distracted persons. There can be no reason why the public should be charged with the support of a person having ample means for that purpose, nor would it be humane to remove such persons from the kind and protecting care of relatives and friends, against their will. But unless this section is confined to paupers, it would be the duty of the overseers of the poor in all cases to take such persons into their custody, and support them as a county charge.   The law was enacted under the dictates of justice and humanity, and to hold that such persons must be removed from the care of friends, would be unreasonable, and to support them as a public charge, where they had ample means, would not be just.   We are therefore of the opinion that an insane person having property adequate to his support is not a pauper, and consequently the county is not liable for such person's support.   Nor is the city of Alton liable to support such a person.   Their contract with the State was to support the paupers within the limits of the city, and this they are required to do, whether such pauper be sane or insane.   But they are not liable under this provision in their charter to support persons having means for their own support.

The common council, or any other person, might have applied to the Circuit Court of Madison county, and have had a conservator appointed, who would have been compelled to provide for the care and support of this person, so long as her means might last, and until they became exhausted, she was neither a city or county charge.   But the city having voluntarily supported her

without any legal obligation to do so, and without any such legal liability resting upon the county, there is no implied promise by the county to repay to them the expense incurred in her support.

We perceive no error in this record for which the judgment of the Circuit Court should be reversed, and the same is therefore affirmed.

*Judgment affirmed.*