LEBCHER, RESPONDENT, *v.* BOARD OF COMMIS-SIONERS OF CUSTER COUNTY, APPELLANT.

MUNICIPAL CORPORATION — *Counties* — *Contracts of public officers.* — Contracts made by public officers, as commissioners of a county, obtain validity only by force of the law authorizing their making, and persons contracting with such officers are charged with knowledge of their lawful power and the extent of their authority.

9  315
11  493

9  315
14  361
23*  713
36*  454

9  315
17  557

9  315
18  239

9  315
28  366

9  315
f34  87

9  315
f38  268

STATUTORY CONSTRUCTION.—*Contracts*— *County poor, sick, and infirm.*—Sections 956, 958, 959, 960, and 962, fifth division of the Revised Statutes, provide in substance, that every poor person unable to earn a livelihood in consequence of bodily infirmities, idiocy, lunacy, or other cause, shall receive relief from the county, where there are no relatives financially able to maintain such pauper; that the county commissioners shall annually invite proposals and let contracts for the care, support, and maintenance of the sick, poor, and infirm, and that such persons shall cease to be a charge upon the county when reported by the county physician to be physically able to support and maintain themselves. A contract was let by the appellant for the care of the "poor" at a certain price *per capita,* and for the care of the "sick and infirm" at another price *per capita.* *Held,* that the contract was void, the only contract authorized by the law being one for the care of such persons as were poor and therewith sick and infirm.

JUDGMENT— *Counter-claim— New trial.*—In the case at bar, although the contract was void, judgment cannot be ordered for the defendant where it is impossible for this court to determine whether the jury cut down the demand of the plaintiff, or allowed a portion of defendant's counter-claim, and the case must be remanded for a new trial.

*Appeal from Third Judicial District, Yellowstone County.*

The cause was tried before LIDDELL, J.

*J. H. Garlock,* and *Strevell & Porter,* for Appellant.

The proposal of Clark was to care for the "sick and infirm" at $12 per week *per capita,* and for the poor at $1.50 per week *per capita* if cared for at the county poor-house, and for the *poor* at $7 per week *per capita* if cared for in Miles City. This proposal was accepted. Before any person can become a legal charge upon the tax-payers of any county, he must be a *poor person, unable to earn a livelihood by reason of some of the causes named in section* 956. It is not enough that a person is *sick* and *infirm.* Nor does the fact of one's being poor of itself entitle him to be supported by the labor of others; he must be a poor person unable by reason of bodily infirmity to earn a livelihood. He must be poor, sick, *and* infirm. This is the plain provision of our law. This view of the law is confirmed by section 962, which provides that the county physician must once every week examine every person who is a county charge, and if any person is physically able to support and maintain himself, such person shall cease to be a charge upon the county. There was no authority of law then for letting such a contract as the alleged contract under which this claim is made. In the case of *Johnson* v. *Santa Clara County,* 28 Cal. 547, the court says: "A

contract providing for the care and treatment of sick persons not indigent, and if indigent not a resident of the county, would be void for want of power in the board to make it." It has been urged that neither this plaintiff, nor Clark, nor any one dealing with the county in this matter, was bound to know, or pay any attention to see whether or not the law was being complied with by the board of commissioners. This assumption is such a complete violation of every known principle of law that we have little disposition to cite authorities to show its absurdity.' Mr. Dillon, in his work on Municipal Corporations (3d ed.), section 447, says: "It is a general and fundamental principle of law that all persons contracting with a municipal corporation must at their peril inquire into the power of the corporation, or its officers, to make the contract; any contract beyond the scope of the corporate power is void. (*Parr* v. *Village of Greenbush,* 72 N. Y. 472; 1 Dillon on Municipal Corporations, § 457; *Zottman* v. *San Francisco,* 20 Cal. 105; 81 Am. Dec. 96.)

*C. R. Middleton,* for Respondent.

As to the liability of counties for beneficial use of money, labor, or property, though not formally obligated therefor, see 4 Am. & Eng. Encycl. of Law, 363, and the authorities there cited; *County* v. *Bridenhart,* 16 Pa. St. 458; *Salt Lake City* v. *Hollister,* 118 U. S. 259; *Louisiana* v. *Wood,* 102 U. S. 294; *Henderson* v. *Sibley County,* 28 Minn. 515; *Pimental* v. *City of San Francisco,* 21 Cal. 351; *Gray* v. *Tompkins County,* 93 N. Y. 603; *Stamp* v. *Cass County,* 47 Mich. 330; *Waitz* v. *Ormsby County,* 1 Nev. 370.) Where one performs services for which the county commissioners were authorized to contract, and with their knowledge and consent, and whose work was accepted and used by the county, and for the benefit of the county, he may recover what the work and materials were reasonable worth; and where a contract was in fact entered into, but was informal, it may be resorted to for the purpose of ascertaining the reasonable value of such work. (*Madison County* v. *Gibbs,* 9 Lea, 383; *Atkins* v. *Barnstable Co.* 97 Mass. 428; *Wolcott* v. *Lawrence Co.* 26 Mo. 272; *Moore* v. *Mayor,* 73 N. Y. 238; 29 Am. Rep. 134; 2 Kent Com. *291; *Smith* v. *County Commissioners,*

21 Kan. 669.)   Where a contractor has entered into a contract in good faith, relying upon the regularity of the proceedings of the common council, the city having received the benefit of the performance, is estopped from questioning the regularity in that regard.   (Dillon on Municipal Corporations [3d ed.], §§ 459 and notes, 938; *Moore* v. *Mayor, supra; Mott* v. *Hicks,* 1 Cowen, 513; 13 Am. Rep. 550.)   If a party contracting with the commissioners of a county finds the acts to be within the scope of their authority, he has a right to assume that all the necessary conditions have been complied with; and when a party has rendered service to a county under such circumstances, the law will presume that all matters of formality have been compiled with on the part of such board.   (*Moore* v. *Mayor, supra;* Green's Price's Ultra Vires, ch. 5, p. 426.)

DE WITT, J.—In December, 1882, the board of commissioners of Custer County purported to let to one John Clark a contract for the care of the sick and infirm of the county for the following year at the rate of $12 per week; and for the care of the poor of the county at the rate of $1.50 per week if cared for at the poor-house, and $7 per week if cared for in Miles City. The complaint alleges that in pursuance to the contract, John Clark cared for such sick and infirm, by reason whereof the county became indebted to him in the sum of $6,098.87, including also his care for the poor to the extent of $13.50 at the poor-house, and $365 at Miles City; that this indebtedness was assigned by John Clark to the plaintiff.   This constitutes plaintiff's first cause of action, on which he recovered judgment for nearly the whole amount, it appearing that for some reason the verdict was for $800 less than the demand.   The county appeals from an order denying a new trial, and from the judgment.

The action was upon the alleged contract, the validity whereof was attacked by defendant, and to the admission of which in evidence numerous exceptions were taken and saved.   The judgment was obtained on the contract.   We will therefore first examine the validity of the contract.   If made at all, it was made under authority of the statutes which were at that time found in the Revised Statutes, fifth division.   "Sec. 956.   Every poor person who shall be unable to earn a livelihood in conse-

quence of bodily infirmities, idiocy, lunacy, or other cause, shall be supported by the father, grandfather, etc.; *provided,* that when any person becomes a pauper from intemperance or other bad conduct, he shall not be entitled to any support, except parent or child." "Sec. 958. When any poor person or persons shall not have relations, . . . . then the said pauper shall receive such relief as the case may require, out of the county treasury, as is hereinafter provided. Sec. 959. The county commissioners of their respective counties shall, at their regular session in September of each year, make an order directing the clerk of the board to publish a notice in a newspaper inviting sealed proposals for the care, support, and maintenance of the sick, poor, and infirm of the county, *per capita,* by the week, for the succeeding year," etc. "Sec. 960. Said proposals shall be addressed to the clerk of the board of county commissioners, and the said commissioners shall, at their December term, . . . . open and carefully compare said bids or proposals, and shall award the contract for the care, support, and maintenance of the sick, poor, and infirm of the county, by the week, *per capita,* to the lowest responsible bidder for the ensuing year." Section 962 provides that the county physician shall "examine each week all persons who are or may become a charge upon the county; and if, after such examination, he shall be satisfied that the physical condition of such person or persons is such as to enable such person to support and maintain himself or herself, he shall so notify the contractor or contractors having such person or persons in charge." The statute provides for the form of the notice, and filing a duplicate, and then says: "And after the serving of said notice, and filing the duplicate thereof with the clerk, said person mentioned in said notice shall cease to be a charge upon said county."

It appears in evidence, from the records of the board of county commissioners for the December meeting, 1882, that bids were filed by divers persons for the care of the sick, poor, and infirm; that John Clark filed separate bids as follows: "John Clark proposed to care for the sick and infirm for the consideration of $12 per week *per capita,* and for the poor for the consideration of $1.50 per week *per capita* at the county poor-house, and for the poor for the consideration of $7 per week *per capita* in

Miles City." These bids were accepted. As far as it is neces-
sary for us to here consider the matter, these bids and the accept-
ance constituted the contract upon which plaintiff sues. For
the services alleged to be rendered under this contract, the claim
for which services was assigned to plaintiff, plaintiff obtained
his judgment on his first cause of action.

The defendant, in its answer, alleges fraud, collusion, and con-
nivance between Clark, plaintiff, and the members of the board
of commissioners. No evidence of this, however, was intro-
duced except as it may appear on the face of the contract.
Defendant also sets up a counter-claim in a large amount, in
regard to which there was testimony.

We will first determine whether the contract which, as we
have said, was the foundation of plaintiff's first cause of action,
was valid.

The contract was made with public officers, with the commis-
sioners of Custer County. An individual may contract as to
lawful subjects as he pleases. Municipal corporations or public
officers are bound by the law. They are authorized by the law
of their creation to make certain contracts. They are creatures
of the law, and not of nature. They have not natural rights,
but only rights given by the law. Their contracts obtain valid-
ity only by force of the law authorizing their making. It fol-
lows that, if they make contracts that the law does not empower
them to enter into, there is no authority for such contract, noth-
ing for it to stand upon, and it falls of its own weight. It is
void. (*Parr* v. *Village of Greenbush*, 72 N. Y. 463; *Head* v.
*Providence Ins. Co.* 2 Cranch, 127; *Bonesteel* v. *Mayor*, 22 N. Y.
162; *Foster* v. *Coleman*, 10 Cal. 279; *Zottman* v. *San Francisco*,
20 Cal. 96; 81 Am. Dec. 96; *Argenti* v. *San Francisco*, 16 Cal.
256; *City of Alton* v. *County of Madison*, 21 Ill. 115; Dillon on
Municipal Corporations, § 381; *Thomas* v. *Richmond*, 12 Wall.
349; *Clark* v. *Des Moines*, 19 Iowa, 209; *Loker* v. *Brookline*,
13 Pick. 348; *Philadelphia* v. *Flanigen*, 47 Pa. St. 27.)

Persons contracting with such artificial creations of the law,
as municipal corporations and public officers, are charged with
notice of the character and constitution of the entity with which
they deal. They know the law, and know what are valid acts
of such artificial persons. They contract at their peril. The

assignee, as plaintiff herein, of a claim against such municipal corporation or public officer arising out of an alleged contract with the same, has the same notice as the original contractor. He knows the character, powers, and constitution of the contractor. (See cases last cited.)

If the contract in question were void, the plaintiff cannot recover thereon. The only authority that the commissioners of Custer County had to make the contract is found in the statutes above cited.

We observe, *in limine*, that the chapter of the Revised Statutes from which the citations *supra* are made is entitled "Poor," and the original act is entitled "An act to provide for the support, care, and maintenance of the county sick and poor," approved February 11, 1876.

In viewing the whole act, we are of opinion that the intent of the law is easily ascertainable. The county is to care for "poor persons who shall be unable to earn a livelihood in consequence of bodily infirmity," etc. The statute does not command the county to care for the "poor" simply. If so, the State would readily become a popular place of residence for the healthy, ablebodied, lazy beggars of the world. If one be poor in purse, but wealthy in brawn or brain, he is not to be a charge upon the county. The statute, section 962, *supra*, provides that when a person properly in charge of the county ceases to be "sick and infirm," although he still remain "poor," he shall no longer be maintained by the county; and to guard against fraud and imposition by physically vigorous paupers and dishonest contractors, it is provided that the county physician shall examine such persons, and, if they be able physically to take care of themselves, return them to their own resources. (§ 962, *supra*.) This is a plain declaration of the law that the county commissioners shall not support and care for persons whose only claim on public bounty is their poverty. To give them such a claim other ills must be present. They must be unable to earn a livelihood by reason of sickness, infirmity, or other cause; and they must have come to their deplorable state by misfortune, and not by vice. (§ 956, *supra*.) It was never contemplated that the State should care for all the poor, without regard to the condition of such poor as to ability, health, strength, and

virtue. The purview of the statute is clearly against such a construction.

We are therefore of opinion that the alleged contract between John Clark and the commissioners of Custer County for the care of the poor of the county is void.

Again, the contract to care for the sick and infirm is equally obnoxious to objection. We cannot construe the statute as requiring or authorizing the county commissioners to care for the "sick and infirm," as such alone. The wealthy and the well-to-do "sick and infirm" must care for themselves, from their own opulence or competency, and not live upon the taxes collected from their neighbors. Sickness and infirmity, under the statute, confer no claim upon the State. It is only when they are joined with poverty that the claim arises that is supplied from the store-house of a bountiful State.

We come, therefore, to the conclusion that the contract between John Clark and the commissioners of the county for the care of the sick and infirm was wholly unauthorized by the law, and void. (*Johnson* v. *Santa Clara County,* 28 Cal. 545; *City of Alton* v. *County of Madison,* 21 Ill. 115.)

We have above noticed that the defendant county alleges fraud and collusion between John Clark, the plaintiff, and the county commissioners, in the matter of these contracts. The face of the record of the proceedings of the board of commissioners is the only evidence under this allegation, and by that the letting of the contract seems to be a cunningly devised fable to avoid the plain intent of the law. This view is not altered when we observe that the poor at the poor-house cost $13.50, and the sick and infirm nearly $6,000. The contract that the commissioners were authorized to let was one for the care of such persons as were poor, and therewith sick and infirm. What they did do was an evasion of the plain intent of the law, and their alleged contract is void. No recovery can therefore be had under plaintiff's first cause of action.

It is unnecessary to examine the case further. The judgment and the order denying the new trial must be reversed, and the case remanded; and the same is hereby ordered. This court cannot order judgment entered in the District Court, as appellant requests. Appellant pleads and insists upon a counter-

claim larger than the plaintiff's demand. The judgment of the court below was for less than the plaintiff's demand. It is impossible for this court to say whether the jury cut down the demand of the plaintiff, or allowed a portion of the counterclaim. To determine this matter, the case must go back to the District Court for a new trial.

BLAKE, C. J., and HARWOOD, J., concur.