## HOFFMAN ET AL., RESPONDENTS, *v.* BOARD OF COUNTY COMMISSIONERS OF GALLATIN COUNTY ET AL., APPELLANTS.

[Submitted April 10, 1896.   Decided May 4, 1896.]

COUNTIES—*Constitutional limit of indebtedness—Illegal bond issue.*—A loan of $30,000 by a bank to a county, made in one day by splitting the sum loaned into several amounts of $10,000 or less, each, is an attempted evasion of section 5, Article XIII of the constitution, prohibiting a county from incurring an indebtedness for any single purpose to an amount exceeding $10,000, without the approval of a majority of the electors thereof voting at an election for that purpose; and a bond issue to fund the indebtedness so created, together with other legal warrants, is void.

SAME—*Action to enjoin illegal bond issue—Sufficiency of complaint.*—A complaint in an action to enjoin the issuance of bonds by a county, which alleges, in effect, that the board of county commissioners pretended to borrow a certain sum from a bank at one time and in four several amounts, issuing warrants therefor, in order to create an apparent warrant indebtedness of the county; that the amounts were treated as loans for which the bank filed its claims; that at the time of the issuance of the pretended warrants there was no money due said bank, but that it was then agreed between the county and the bank that said warrants represented only a pretended loan deposited to the credit of the county and which should not be drawn against unless a sufficient amount of bonds were sold to take up said warrants; that upon the second day after the allowance of the claims the commissioners made an order for the issuance of bonds to fund the outstanding warrant indebtedness and for the publication of notice thereof; that the question of issuing the bonds was never submitted to the electors and that they were not issued to redeem outstanding bonds, states a cause of action.

SAME—*Same—Answer.*—Where the answer in such case admitted the making of the agreement pleaded in the complaint, but averred that it was abandoned prior to the commencement of the action, this is an admission that such an agreement was in force when the warrants were drawn, and a denial that the board of commissioners at any time created any fictitious indebtedness is inconsistent therewith and evasive. (*Power* v. *Gum,* 6 Mont. 5; *Stewart* v. *Budd,* 7 Mont. 573; *State* v. *Dickerman,* 16 Mont. 278, cited.)

SAME—*Same—Judgment on pleadings.*—The complaint in such case having charged a pretended loan for $30,000, and that the warrants were issued as the basis for a bond issue with which to fund the loan, judgment on the pleadings was proper, where the answer identified the warrants as described in the complaint, but failed to specifically deny that the whole transaction was a loan of $30,000, and that it was the sums making up that amount which, added to the legal outstanding warrants, made up the total indebtedness alleged in the answer.

SAME   *County commissioners—Illegal bond issue—Remedy of tax payers.*—Where county commissioners undertake to incur an indebtedness against the county which is unconstitutional, this is not an exercise of administrative discretion in a matter within their jurisdiction, requiring a review by appeal under section 764, Fifth Division of the Compiled Statutes, providing that any one aggrieved by the action of the commissioners may appeal to the district court, but is a void act which may be restrained by injunction.

COUNTY COMMISSIONERS—*Injunction to restrain delivery of illegal bonds—Diligence.*—An injunction to restrain a bond issue for the purpose of funding warrants illegally issued will not be denied for want of diligence where the warrants were issued March 15th and the action was commenced May 28th and before the delivery of the bonds.

SAME—*Same—Parties defendant.*—In an action by tax payers against the board of commissioners to enjoin the delivery of bonds illegally issued and sold, the banks which had purchased the warrants and bonds are not necessary parties defendant.

SAME—*Same—Parties plaintiff.*—An action to enjoin the delivery by the county commissioners of bonds illegally issued and sold, and to have the proceedings of the board declared void, is properly brought in the name of the plaintiffs as tax payers. (*Davenport* v. *Kleinschmidt*, 6 Mont. 502, cited.)

SAME—*Same—Appeal.*—Where the county treasurer is made a party defendant in such action with the commissioners, and defaults, the commissioners cannot, on appeal, complain of the judgment rendered against him from which no appeal was taken.

*Appeal from Ninth Judicial District, Gallatin County.*

ACTION by tax payers to enjoin the county commissioners, clerk and treasurer, from issuing bonds. Decree was entered for the plaintiffs below by W. S. HARTMAN, ESQ., special judge. Affirmed.

Statement of the case by the justice delivering the opinion.

The complaint, after alleging that the plaintiffs are taxpayers of Gallatin county, avers that three of the defendants are members of the board of commissioners of Gallatin county, that the defendant Vaill was and is county clerk, and that defendant Chrisman was and is county treasurer. It is then alleged: That on or about March 13, 1894, the board of commissioners wrongfully and unlawfully, on the faith of Gallatin county, pretended to borrow from the Commercial Exchange bank, at Bozeman, for the pretended use of said county, the sum of $30,000, and to issue therefor the pretended warrants of said county, which said warrants said bank pretended to accept, in the said amount of $30,000, on the funds of the county. That said warrants were so pretended to be issued upon a pretended order of the board of county commissioners made and entered on the commissioners' journal on March 13, 1894. That at the time of the pretended issuance of said pretended warrants there was not, according to plaintiffs' information and belief, any sum of money due, or to become due, to said bank from Gallatin county, and said bank did not then or ever pay, or promise to pay, any sum of money for or on account of such warrants, or either of them; and no moneys whatever, on account of said warrants, have at any time or in any manner been placed in the hands or at the disposal of the treasurer of the county.

That, on the contrary, it was then and there mutually agreed between the commissioners and the bank that said warrants were issued for, and represented only, the pretended sum of $30,000 pretended by said bank to be then and there deposited by itself, with itself, to the credit of said county, and the said warrants were not to, and should not, draw any interest, and that said money so pretended to be paid therefor by said bank, and so pretended to be deposited in said bank, should not, nor should any portion thereof, be drawn .against by said county, or paid out by said bank, except on the condition, and in the event alone that the board of commissioners would and should thereafter issue bonds of Gallatin county .in an amount sufficient, and realize upon the sale thereof a sum sufficient, to pay and take up said warrants.

That the question of borrowing the said sum of $30,000 was never submitted to the electors of the county. That the board of commissioners, in pretending to borrow the said sum of $30,000, and issuing warrants therefor, did so for the purpose of creating a fictitious indebtedness, in the sum of $30,000, against the county, upon which to base an issue of bonds.

That on March 15, 1894, the legal outstanding warrants and orders of Gallatin county, for which the county was liable, did not exceed $17,000, and were drawn upon and were standing against the several funds of the county in the following manner, to-wit: Against the contingent fund, $3,000; against the road fund, $7,000, against the bridge fund, $4,000; and against the general fund $4,000. That Gallatin county has no legal outstanding bonds now due, or soon to become due. That, notwithstanding the outstanding legal orders or warrants of Gallatin county did not and do not exceed $17,000, the board of commissioners on March 15, 1894, ordered that the commissioners of Gallatin county issue, on the credit of the county, coupon bonds to the amount of $45,000, bearing 6 per cent. interest, payable semi-annually, and to bear date the first day of May, 1894, redeemable in 20 years after May 1, 1894, and ordered the county clerk to give notice of the sale of such bonds as required by law, and that the said bonds be sold to the highest bidder as provided by law.

That the county clerk gave notice as ordered, and on May 1, 1894, the board of commissioners awarded the sale of said bonds to the Farmers' & Mechanics' Savings Bank, of Minneapolis, Minn., and then and there wrongfully and unlawfully ordered said bonds to be prepared, executed, and to be delivered to said bank; and the defendants are about to and will deliver said bonds, in accordance with above order, unless restrained by the court. That the commissioners never submitted the question of issuing said bonds to a vote of the electors, and that the bonds so about to be issued are not intended to be issued for the purpose of redeeming any part or portion of the outstanding bonds of the county. That the said proposed execution, issuance, and delivery of said bonds is without authority of law, and that said bonds, if so issued, would become, in the hands of an innocent purchaser, a legal and binding obligation against the county, and greatly increase the burden of taxation thereof, and that the plaintiffs have no plain, speedy, and adequate remedy at law.

The plaintiffs prayed for an order enjoining and restraining the defendants from issuing or delivering the bonds, and that all proceedings taken by the board of commissioners towards the issuance of said bonds be adjudged null and void, until further relief, and for a temporary restraining order.

The defendant board of commissioners demurred to this complaint on the ground that the court had no jurisdiction of the persons of the defendant commissioners, or of the subject-matter of the action, and upon the further ground that there was a defect of parties defendant, in that the Farmers' & Mechanics' Savings Bank of Minneapolis was not made a party, but was a necessary party to the complete determination of the issues, and also upon the ground that the complaint did not state facts sufficient to constitute a cause of action, and that the plaintiffs have no legal capacity to sue, in that it does not appear that the consent of the attorney-general of the state, or of the county attorney of Gallatin county, was obtained to bring this action. This demurrer was overruled, and thereupon the county commissioners filed their answer.

They deny that the commissioners wrongfully or unlawfully pretended to borrow any money from the Commercial Exchange Bank, or any other bank, for the pretended use of said county, in the sum of $30,000. Deny that the board ever issued any pretended warrants to said bank, or ever issued any warrants except such as it was authorized to issue. Deny that any warrants were ever issued by the board as set forth in the complaint, or accepted by the bank as averred therein. Deny that the board pretended to make any pretended order as set forth in the complaint, on March 13, 1894, or at any other time, but admit that there were numerous and various orders of said board made on the said 13th day of March, 1894, and spread at large on the commissioners' journal; but the defendants aver that there were no warrants whatever issued on March 13th to said Commercial Exchange Bank, or in pursuance of any order made or entered in said commissioners' journal, as set forth in the complaint, on March 13, 1894. Deny that at the time of the issuance of certain warrants on the treasury of Gallatin county, payable to the Commercial Exchange Bank, there was no money due or to become due to said bank from the county. Deny that there was no consideration for the said warrants, or any of them. Admit that the commissioners and the bank made and entered into the agreement mentioned and described in plaintiffs' complaint, substantially, but the same was, prior to the bringing of this action abandoned by the parties thereto. Deny that said warrants or any warrants issued to the bank, represented the pretended sum of $30,000, or any other pretended sum, and deny that it was ever agreed between the bank and the board of commissioners that said warrants, or any of them, were not to draw interest. Deny that the board ever deposited, or had on deposit, any money belonging to the county with said bank, or that said bank ever deposited any money by itself, or with itself, to the credit of the county, under any agreement whatsoever. Deny that under any agreement the bank received any deposits of money from the board at any time. Deny that the board ever or at all borrowed, or pretended to borrow, from

the bank, or became indebted for any single purpose to said bank to the sum of $30,000, or in any other or greater sum than $10,000. Deny that it was ever or at all agreed between the board and the bank that any money was represented by said warrants, or either of them. Deny that the bank paid any money for said warrants, but admit that certain warrants were drawn, payable to said bank, for debts due and owing from the county to said bank. Deny that any warrant was issued to said bank in any greater sum than $10,000, or that the county was ever indebted to said bank for any single purpose, in any sum to exceed $10,000. Deny that on March 15, 1894, the legal outstanding warrants or orders of the county, or for which the county was liable, did not exceed $17,000, but aver that the legal outstanding warrants or orders of the county on that date amounted in the aggregate to at least $45,000. Deny that the legal outstanding warrants or orders at the time said complaint was filed did not exceed $17,000, but on the contrary, aver that said warrants and orders were in excess of $51,000. Deny that there was ever any fictitious indebtedness created for any purpose whatever.

The defendants then set forth that there was a misjoinder of parties defendant, in that the Commercial Exchange bank, the owner of the warrants claimed to be illegal, and the Farmers' & Mechanics' Savings Bank of Minneapolis, the owner of the bonds in controversy, are not defendants, and are necessary parties to the full determination of this suit. The defendants then plead in bar (a) that on March 14, 1894, Gallatin county was indebted to the Commercial Exchange Bank, at Bozeman, in the sum of $10,000, which was then due and unpaid; (b) that a duly itemized account, verified and prepared as required by law, was presented to the board on March 14, 1894, and was duly and regularly examined, settled and allowed to said bank, as an account properly chargeable against the county, for the sum of $10,000; (c) that thereafter a county order for said $10,000 in favor of said bank, in payment of said account, was signed and delivered to said bank;

(d) that neither the plaintiffs nor other taxpayers have ever or at all, since the 14th day of March, 1894, served any notice of appeal on the board from the allowance or decision of the board to the district court, although the proceedings of the board were duly published, and plaintiffs were aware of the allowance of the account; (e) that said order so drawn is one of the warrants which were funded by said board of commissioners as set forth in plaintiffs' complaint.

As further answer and plea in bar, the defendants allege an indebtedness to the said bank in the sum of $2,500, and set forth that an account for said sum of $2,500 was duly presented to the board, and allowed, and a county order for said sum delivered, and that no appeal was taken, and that this warrant for $2,500 is one of the warrants which was funded by the board as set forth in plaintiffs' complaint.

It is next alleged that the county was indebted on March 14, 1894, to the same bank, in the further sum of $10,000, and that an account was duly presented for this sum, and allowed, and a warrant therefor delivered, and that this warrant was one which was funded by the board, as set forth in the plaintiffs' complaint.

It is next alleged that on the same 14th day of March, 1894, the county was indebted to the same Commercial Exchange Bank in the sum of $7,500, which was then due and unpaid, and that an itemized account for said sum was duly presented to the board, and a warrant therefor drawn and delivered to said bank, and that no appeal from the action of the board was taken, and that the said warrant is one of the warrants funded by said board, as set forth in plaintiffs' complaint.

The defendants then plead that all these warrants upon said allowed accounts were all warrants issued to said Commercial Exchange Bank at the March, 1894, meeting of the board of commissioners, and were regularly and legally outstanding on March 15, 1894, and, together with numerous other warrants of said county, aggregated on said date the sum of $45,000; that in order to redeem said $45 000 of legal, outstanding warrants and orders, the bonds mentioned in the plaintiffs'

complaint were ordered to be issued, and notice of the selling of the same was given as required by law; that thereafter, on May 1, 1894, sealed proposals were opened by the board of commissioners, and the Farmers' & Mechanics' Savings Bank of Minneapolis, Minn., being the highest and best bidder, the board of commissioners duly and regularly sold said bonds to said bank, and said bank has since May 1, 1894, been the owner of said bonds, and entitled to the possession thereof; that said bank, in pursuance of the contract of purchase of said bonds, in part payment, on May 1, 1894, paid to Gallatin county $1,000, and has delivered to said county blank printed forms of coupon bonds, and nothing remains to be done upon the part of the county, to consummate said sale, except the ministerial act of signing, sealing, and delivering said bonds to said bank, which has been at all times ready and willing to receive them, and to pay therefor the balance due upon the purchase price; that said $45,000 worth of bonds were sold to said bank at par value and $2,526 premium; that the plaintiffs took no action in relation to said warrants or bonds until long after said bonds had been sold by the county to the bank, and after the rights of the bank had intervened herein; that said bonds were sold and issued under the provisions of Chapter 40, Fifth Division of the Compiled Statutes of Montana, and the acts amendatory thereof, and the bonds and other indebtedness of the county do not exceed the constitutional limits of indebtedness of said county; that, when said bonds were ordered issued, neither of said warrants drawn payable to the order of said bank had been paid, nor had any of said $45,000 of indebtedness, and on May 1, 1894, when said bonds were sold to the said Farmers' & Mechanics' Savings Bank of Minneapolis, there were over $45,000 of warrants and orders registered and not paid for want of funds, and bearing interest at the rate of 7 per cent. per annum; that the said Farmers' & Mechanics' Bank is entitled to have said bonds signed, sealed and delivered without let or hinderance of the plaintiffs and by reason of the facts in the answer set forth, it is averred that the said county of Gallatin, and the citizens of the county

are barred and estopped from questioning the validity of said bonds.

The defendants further aver that on March 15, 1894, the board found that there were $45,000 of warrants outstanding, due and owing, and legally issued, against said county, and that the said bonds mentioned in the plaintiffs' complaint, and the whole thereof, were to be, and were, issued in lieu of, and to take up, said outstanding orders of said county to an amount equal to the amount of said bonds, which said commissioners had full authority to do, and, having jurisdiction thereover, are not subject to the control or discretion of the court, to be by it restrained in the lawful exercise of such authority or discretion.

Defendants ask that the court decree that the Farmers' & Mechanics' Savings Bank be entitled to the bonds, and for further relief.

The plaintiffs moved for judgment on the pleadings, for the reason that said answer does not state facts sufficient to constitute a defense or counterclaim, and that said answer is sham and irrelevant, and does not raise any issues. This motion for judgment on the pleadings was sustained. The commissioners refused to further amend their answer, while the defendant Chrisman, county treasurer, defaulted. It was then ordered that the temporary restraining order be made perpetual, and that the board of commissioners and the county clerk be restrained from executing, or delivering to the Farmers' & Mechanics' Bank, or to any bank or person, the bonds described in the complaint; and the commissioners, county clerk and treasurer were restrained and enjoined from in any manner executing, selling or delivering any bonds of said county on account of said $30,000 of warrants issued to the Commercial Exchange Bank, complained of in plaintiffs' complaint.

The board of commissioners and the county clerk appeal from the judgment, and from the order thereof.

*Sanders & Sanders* and *John A. Luce*, for Appellants.

I.   When the board of supervisors heard and determined

the facts involved in the claim, and made their allowance thereof, it became *res judicata,* and in the absence of fraud, conclusive. (*McFarland* v. *McCowan,* 33 Pac. 113; *Waugh* v. *Chauncey,* 13 Cal. 11; *Fall* v. *Paine,* 23 Cal. 303; *County* v. *County,* 6 Mont. 151; *Tilden* v. *Sacramento County,* 41 Cal. 68; *Snelson* v. *State,* 16 Ind. 29; *Chicago & A. Ry. Co.* v. *Sutton,* 30 N. E. 291-293 and 294; *State* v. *Welover,* 127 Ind. 315, S. C. 26 N. E. 762; *Commissioners* v. *Gregory,* 42 Ind. 32; *Jackson* v. *Smith,* 120 Ind. 520-522, S. C. 22 N. E. 431; *Wood* v. *Bangs,* 46 N. W. 586; *McCoy* v. *Able,* 30 N. E. 528-530-531; *Holmes* v. *Stateler,* 57 Ill. 210; Elliott on Roads and Streets, page 222.) The action of a tribunal clothed with jurisdiction over a particular class of cases cannot be reviewed in a court of equity, except upon the ground of fraud and then only in a very restricted class of cases to which this action does not belong. (*United States* v. *¹ lint,* 4 Sawy. 51; *United States* v. *Throckmorton,* 98 U. S. 61-69.) Nor was any fraud such as would vitiate the decision of the board alleged or proved. (*Vance* v. *Burbank,* 101 U. S. 519; *Case of Broderick's Will,* 21 Wall. 503; *Cragin* v. *Powell,* 128 U. S. 698; *French* v. *Fyan,* 93 U. S. 169; *Maxwell's Land Grant Case,* 121 U. S. 380; *Ableman* v. *Rooth,* 12 Wis. 81; *Stokes* v. *Knarr,* 11 Wis. 407; *Wilkinson* v. *Rewey,* 59 Wis. 554; *Riddle* v. *Baker,* 13 Cal. 296.) A court of equity is not in any sense a court of review. The action of the special tribunal authorized to hear and determine certain matters arising within the course of its duties is final and its enforcement can not be enjoined. (*Johnson* v. *Townsley,* 13 Wallace 12; *Tilton* v. *Cofield,* 93 U. S. 163; *Parmeter* v. *Bourne,* 35 Pac. 588; *Rogoss* v. *Cummings Co.,* 54 N. W. 683; see *Holmes* v. *Steele,* 28 N. J. Eq. 173; *Cairo R. Co.* v. *Titus,* 12 C. E. Green (N. J.) 102; *Vanarsdalen* v. *Whitaker,* 10 Phila. (Pa.) 153; Black on Judgments, § 378.)

II.   By far the most serious objection to the maintenance of this action is that a plain, speedy and adequate remedy exists by appeal, from the decision of the board. This remedy has never been pursued.   An allowance of an account in the

absence of such appeal is conclusive and equity will not intervene by way of injunction to prevent the collection of the warrants issued upon such allowance.. (*Picotte* v. *Watts*, 31 Pac. 805; *State ex rel.*, *Norcross* v. *Medical Board*, 10 Mont. 162; *Argo* v. *Barthoud*, 80 Ind. 63; *County of Knox* v. *Montgomery*, 9 N. E. 917; Black on Judgments, § 363; High on Injunctions, § 165; *Brewer* v. *R. R. Co.*, 113 Mass. 52; *Martin* v. *Supervisors of Green Co.*, 29 N. Y. 645; *El Dorado* v. *Elstner*, 18 Cal. 144; *Dixon Co.* v. *Barnes*, 13 Neb. 294; *Colusa Co.* v. *De Jarnett*, 55 Cal. 373; 10 Am. & Eng. Ency. of Law, 901 and cases cited; *Fleming* v. *Munn*, 61 Miss. 603; *County of Greene* v. *Daniel*, 102 U. S. 187.)

III.   Plaintiffs not only neglected to appeal but stood by during the whole period of the advertisement of the sale of the bonds before making any attempt to right their alleged wrongs. Merits and diligence must be shown. (High on Injunctions, § 114; Black on Judgments, §§ 378-387 and cases cited; *Riddle* v. *Baker*, 13 Cal. 296-305; *Fleming* v. *Munn*, 61 Miss. 603; *Smith* v. *Phinizy*, 71 Ga. 641; *Hanna* v. *Morrow*, 43 Ark. 107; *Phelps* v. *Peabody*, 7 Cal. 50; *Agard* v. *Valencia*, 39 Cal. 292.)

IV.   The board having found, on the 15th day of March, 1894, that there was $45,000 of legal warrants outstanding this decision can not be inquired into in a collateral manner as by an injunction. (*Porter* v. *Purdy*, 29 N. Y. 110; *Van Stenberg*, v. *Bigelow*, 3 Wend. 42; Bigelow on Estoppel, 154.)

V.   Even if the board in borrowing money as alleged in plaintiff's complaint acted without authority, it was under a solemn obligation to repay it and if it did not do so the county was liable to be sued for money had and received. (*Louisiana* v. *Wood*, 102 U. S. 294; *Argenti* v. *City of San Francisco*, 16 Cal. 256; *Chapman* v. *Douglass County*, 107 U. S. 348; *Pimental* v. *The City of San Francisco*, 21 Cal. 352; *Hitchcock* v. *Galveston*, 96 U. S. 341; *Waitz* v. *Ormsby County*, 1 Nev. 370; *Morville* v. *American Tract Society*, 123 Mass. 129; *Clark* v. *Saline County*, 9 Nev. 516; 2 Greenleaf on

Evidence, § 117.) The action of the board constituted a complete estoppel on the county and each of its citizens. (*Bank of California* v. *Shaber*, 55 Cal. 322; *San Francisco Gas Light Co.*, 62 Cal. 581.)

VI. These bonds being funding bonds and the power to issue them being expressly conferred their validity can not be questioned, even if the warrants which they are to take up are illegal. Neither was there any necessity to submit the question of their issue to a vote of the electors as the power is expressly conferred by the statute. (*County of Jasper* v. *Ballou*, 103 U. S. 745; *President, Etc., of Town of Keithburg* v. *Frick*, 34 Ill. 405; *Chandler* v. *The Town of Attica*, 18 Fed. 302; *Orleans* v. *Platt*, 99 U. S. 676; *Hill* v. *Peekskill Savings Bank*, 101 N. Y. 490; *Little Rock* v. *National Bank*, 98 U. S. 308; *Blanton* v. *McDowell Co.*, 101 N. Car. 532; *Lyons* v. *Munson*, 99 U. S. 684; see, also, 15 Am. & Eng. Ency. of Law, 1263-1264; *County of Greene* v. *Daniel*, 152 U. S. 182.) The acts of the officials of the county within the scope of their authority bind the county. (*Bernards Township* v. *Morrison*, 133 U. S. 523; *Orleans* v. *Platt*, 99 U. S. 682; *County of Roy* v. *Vansycle*, 96 U. S. 675; *Commissioners of the County of Knox* v. *Aspinwall*, 21 How. 539·) The rights of third parties have intervened and it is too late to set up the claim now interposed. (*Butler* v. *Dunham*, 27 Ill. 474; *Ford* v. *Cartersville*, 87 Ga. 213.)

VII. The banks were necessary and proper parties. (*Hutchinson* v. *Burr, et al.*, 12 Cal 103; *Patterson* v. *The Board of Supervisors of Yuba County*, 12 Cal. 106; *Hays* v. *Hill*, 17 Kan. 361; *Bingham* v. *Campden*, 29 N. J. Eq. 465; *Butcher* v. *Camden*, 29 N. J. Eq. 478; *Calwell* v. *Prindle*, 11 W. Va. 309; *Denison* v. *League*, 16 Tex. 399; *O'Shea* v. *Twohig*, 9 Tex. 336.)

*Cockrill & Pierce*, for Respondents.

I. The transaction was an attempt by the commissioners in a round-about way to raise $30,000 by issuing bonds of the county. This was an attempt to do indirectly that which

could not be legally done directly. (*State* v. *Commissioners,* 21 Kan. 436.) The only authority given county commissioners in this state to borrow money is in subdivision 4 of section 756, page 844 Compiled Statutes, which reads as follows: "To apportion and order the levying of taxes as provided by law, and to borrow money upon the credit of the county, a sum sufficient for the erection of county buildings, or to meet the current expenses of the county in case of a deficit in the county revenue." The constitution provides, "No county shall incur any indebtedness or liability for a single purpose to an amount exceeding $10,000 without the approval of the majority of the electors thereof, voting at an election to be provided by law." —(Art. 13, Sec. 5.) The constitutional provision above cited limits the amount for each purpose to $10,000, unless submitted to the electors of the county. Hence, the warrants issued for the $30,000 would be for illegal charges against the county, and void. County warrants, if illegal when issued, are illegal for all time. (*People* v. *Super. Eldorado Co.*, 11 Cal. 171; *Linden* v. *Case et. al.*, 46 Cal. 172.) Municipal corporations, in making contracts, must act within the limits and observe the regulations prescribed, else there will be no contract. (*Lebcher* v. *Commissioners of Custer Co.*, 9 Mont., 320.) No subsequent act on the part of a corporation can cure the defect. Issuing the warrants on a non-authorized contract will not cure the defect. The powers of the officers to make a contract may always be inquired into. (*Leavenworth* v. *Rankin*, 2 Kan., 371.) Unless the commissioners had authority to borrow money in the manner attempted, conferred upon them by the legislature, the issuing of warrants therefor or on account thereof, is null and void. (*Waitz* v. *County*, 1 Nev., 370; *State* v. *County*, 14 Nev., 66; *Foster* v. *Coleman*, 10 Cal., 279; *Linden* v. *Case*, 46 Cal., 172; *People* v. *Super.*, 11 Cal., 171; *Murdock Co.* v. *Spencer*, 37 Pac., 483, Cal.) When the provision of the constitution above quoted was adopted, it will be presumed that the framers had in view said paragraph 4 of section 756. The courts have not the power

to add to or take from the language used in such constitutional provisions, but must construe the same literally, and in the light of all the circumstances under which it was incorporated in the constitution. (*Lake Co. Commissioners* v. *Rollins*, 130 U. S. 662; *People ex. rel.* v. *Baker*, 83 Cal. 149; *People* v. *May*, 12 P. R. 840; *Crampton* v. *Zabriskie*, 101 U. S. p. 601; *Smith Canal Co.* v. *City of Denver*, 36 Pac., 844, Cal.; *Law et. al.* v. *People, ex. rel.*, 87 Ill., 385.)

II.    The attempted denials in the answer are general denials; denials of conclusions of law; literal denials, or denials that are evasive; hence they are sham and irrelevant. (*Doll* v. *Good*, 38 Cal., 290; *Stuart* v. *Budd*, 7 Mont., 578; *Power* v. *Gum*, 6 Mont., 5; *Sands* v. *McClay*, 2 Mont., 35; *Blankman* v. *Vallejo*, 15 Cal., 639; *Woodman* v. *Knowlton*, 22 Cal., 164; *Sanders* v. *Bolton*, 26 Cal., 394.)  Neither the Commercial Exchange Bank nor the Farmers' & Mechanics' Savings Bank are necessary or proper parties. (*Kleinschmidt* v. *Davenport*, 6 Mont., 524.)

III.    Section 764, Fifth Division Compiled Statutes, does not limit remedy to appeal, but gives only an additional remedy. Section 744, Fifth Division Compiled Statutes, provides that a county "may sue and be sued;" hence, when a party feels aggrieved by the decision of the commissioners, he may appeal or bring action against the county. (*Commissioners of Leavenworth Co.* v. *Brewer*, 9 Kan., 319; *Trumball Co.* v. *Hutchings*, 11 Ohio, 368, *Price* v. *County*, 6 Cal., 255; *Waitz* v. *County*, 1 Nev., 370; *State* v. *Board of Commissioners, et al.*, 14 Nev., 67; 68 Am. Dec., 297, note.)

IV.    The plaintiffs are not estopped by the act of the commissioners.    "The wrongful acts of the officers of a municipal corporation cannot create an estoppel against the corporation, or taxpayers, or people." (15 Am. & Eng. Ency., 1211 and 1292; *Mayor etc.* v. *Ray*, 19 Wall., (U. S.) 468.)  It matters not if the rights of third parties intervene.  All persons contracting with the officers of a municipal corporation are charged with notice of such officer's authority. (*Lebcher* v. *Commissioners Custer Co.*, 9 Mont., 320.)  If $30,000 of the

bonds threatened to be issued were illegal the entire issue should be restrained. Notice must be given of the amount. (Comp. Stat. Sec. 810, p. 859; *State ex. rel.* v. *School Dist.*, 38 P. R., 462; *People* v. *Baker*, 83 Cal., 149.)

HUNT, J.—The substance of the plaintiffs' complaint is that the board of county commissioners of Gallatin county pretended to borrow $30,000 from the Commercial Exchange Bank of Bozeman, and issued warrants therefor in order to create what appeared to be a warrant indebtedness of Gallatin county to said bank. The amount of this apparent debt, when added to the amount of legal outstanding warrants aggregated over $45,000. To create this apparent additional debt of $30,000, the board of county commissioners pretended to borrow the money in several amounts,—two of $10,000 each, one of $7,500, and one of $2,500. It appears by the complaint that these amounts were all treated as loans, for which the bank filed its several claims or accounts as claims against counties are usually presented. The board allowed each and every claim, and ordered warrants to be issued to the bank. Upon the second day after the allowance of these apparent claims of the bank for $30,000, the commissioners made an order for an issue of bonds of the county in the sum of $45,-000, to fund the outstanding warrant indebtedness, and ordered notice of said sale of such bonds to be published. The question of issuing said bonds was never submitted to the electors, and it is alleged that the bonds are not issued to redeem any part of the outstanding bonds of the county.

The facts pleaded stated a cause of action; for, if it be true that the commissioners were not authorized by law to borrow $30,000, by way of loan, without the approval of the electors, no evasion by which the letter and spirit of the law are violated will be sustained by the court, when a proper case is presented. "Counties, cities and towns are municipal corporations created by the authority of the legislature; and they derive all their powers from the source of their creation, except where the constitution of the state otherwise provides.

Beyond doubt, they are, in general, made bodies politic and corporate, and are usually invested with certain subordinate legislative powers, to facilitate the due administration of their internal affairs, and to promote the general welfare of the municipality. They have no inherent jurisdiction to make laws or to adopt governmental regulations, nor can they exercise any other powers in that regard than such as are expressly or impliedly derived from their charters, or other statutes of the state." (*Commissioners of Laramie Co.* v. *Commissioners of Albany Co.*, 92 U. S., 307; *Lebcher* v. *Commissioners of Custer County*, 9 Mont., 320.)

The constitution (article XIII § 5) provides that "no county shall incur any indebtedness or liability for any single purpose to an amount exceeding ten thousand dollars ($10,000) without the approval of a majority of the electors thereof, voting at an election to be provided by law." This is a general limitation upon the power of county boards, inhibiting their right to incur any debt or liability for one purpose only, in excess of $10,000, without the approval of the majority of the electors voting as may be provided by law. For the exercise of the power within this limited authority the legislation pertinent to the subject may be quoted. The board of commissioners have power "to apportion and order the levying of taxes as provided by law, and to borrow money upon the credit of the county, a sum sufficient for the erection of county buildings, or to meet the current expenses of the county in case of a deficit in the county revenue." Subdivision 4, § 756, Division 5, Compiled Statutes 1887. There was, therefore, in the Compiled Statutes, an expressed recognition of two accounts for which a county might borrow money,—one, to erect county buildings; the other, to meet current expenses in case of a deficit in the county revenue.

The compiled laws of 1887, § 795, also provided that the board of county commissioners should not borrow money for the purposes specified in the statute just hereinbefore quoted, —that is, either to erect county buildings, or to meet current expenses in case of a deficit—without having first submitted

the question of such loan to a vote of the electors of the county. When the constitution of the state took effect, in recognition of its restrictions, the legislature, by an act of March 4, 1891, in relation to county bonds, amended section 795, last cited, so as to read as follows:  "The board of county commissioners of any county may, when in its judgment it is advisable for the county to incur indebtedness or liability for any single purpose in an amount exceeding $10,000, submit the question to the qualified electors of the county."

The appellants have not argued the question whether the last above quoted section, which is now in force, authorizes an indebtedness for any purpose, provided it is single, in an amount exceeding $10,000, or whether such act should be construed as but a means for the execution of a power to borrow money for the only two purposes specified in section 756, viz: the erection of county buildings, or the liquidation of current expenses in case of a deficit. The respondents have referred to this point, contending that the act of 1891 has relation to the limitations in the Compiled Statutes of 1887, and has not abrogated such limitations. But whether or not the respondents are correct in this respect it is not necessary to decide in this case, because, under our view of the pleadings, the issuance of $30,000 worth of bonds for a loan made without the approval of a majority of the electors voting at the election as provided by law was unconstitutional and void. The method employed, of borrowing money for a few hours in sums of $10,000 or less, at a time, is wholly indefensible, and was plainly to get around the constitution of the state, and to avoid the submission of the question of the loan of $30,000 to the electors of the county. The indebtedness, even if real, was incurred for the single purpose of a loan of $30,000 made by the bank, and the splitting of the sum loaned into several separate amounts of $10,-000 or less, each, cannot alter the fact that the county on one day incurred a debt for a single purpose in an amount exceeding $10,000, without submitting the question to the qualified electors of the county.

The answer admits that the commissioners and the bank "made and entered into the agreement pleaded by plaintiffs' complaint, substantially," but says that prior to the institution of this action the parties thereto abandoned such agreement. This is an admission of the fact that such an agreement was in force when the warrants were drawn; that is, that the warrants issued to the bank for $30,000 were not to be drawn against by the county, or paid out by the bank, except upon condition, alone, "and in the event that the said board of county commissioners would and should thereafter issue the bonds of said county in an amount sufficient, and realize from the sale thereof a sum sufficient, to pay and to take up said warrants."

There are denials "that the board at any time created any fictitious indebtedness for any purpose whatever," and that the bank had any deposit of money by the board under any agreement whatever; but such denials are inconsistent with the express admissions of the answer, are clearly evasive, and do not deny the direct and specific statements of the complaint. (*Power* v. *Gum*, 6 Mont. 5; *Stewart* v. *Budd*, 7 Mont. 573; *State* v. *Dickerman*, 16 Mont., 278; *Dole* v. *Burleigh*, 1 Dak. 227, 46 N. W. 692.)

The indebtedness of $30,000 for *any single purpose* is denied, but it is averred that, for debts due from said county to said bank, warrants were drawn. It is denied only that any warrant was issued to the bank in any greater sum than $10,000, or that the county was ever indebted to said bank for any single purpose, in a sum to exceed $10,000.

Again, the allegation of the complaint is that on March 15, the legal, outstanding warrants of the county, for which the county was liable, did not exceed $17,000, made up of warrants in specific amounts against several county funds. This is denied first by a specific denial that the legal, outstanding warrants did not exceed the sum of $17,000, and an allegation that on that date the outstanding orders and warrants amounted to at least $45,000. But this is made ineffective by a denial that the outstanding warrants at the time the complaint was filed (May 28, 1894) did not exceed $17,000, but, on the con-

trary, were in excess of $51,000. Let us, then, look at the affirmative answer. By it we learn that on March 14, 1894, the county was indebted to the Commercial Bank in the sum of $10,000, "which was then due and unpaid;" that the said bank presented its claim for said sum, and the board settled and allowed the account as "properly chargeable against the county of Gallatin, for the sum of $10,000," and thereafter, in payment thereof, a county order for said sum was signed, and delivered to the bank; and that the said order "is one of the warrants which were funded by said board as set forth in plaintiffs' complaint." Like averments are made in reference to three other warrants, all aggregating $30,000. It is then alleged that these four warrants, making $30,000, as drawn upon the bank's account, are all the warrants issued to the said bank in March, 1894, and, together with numerous other outstanding warrants, aggregated on March 15, 1894, the sum of $45,000. Thus, the answer identifies the warrants as being accounts allowed to the bank aggregating $30,000, as specified in the complaint. The warrants being thus identified, we look in vain for some statement in the defendants' pleading which specifically contradicts the complaint in its allegations of facts,—that the county commissioners, on the faith of the county, pretended to borrow from the bank the sum of $30,-000, and to issue therefor the warrants, pretended or otherwise, of the county.

We do not regard the use of the adjective characterizing the loan as a "pretended" one as important to the decision of this case. It signifies the legal view that the plaintiffs take of the conduct of the board, their contention being that because the loan was invalid, by reason of its being made to base a bond issue upon, and because not submitted to the electors, the whole transaction was, in law, an unreal and worthless one; while defendants, by their evasive answer, substantially insist that although the transaction was had, as alleged, still it was done by such a method and in such a form that it was not in excess of the legal powers of the board, hence was not pretended or worthless at law.

But how did these accounts of $10,000, $2,500 and $7,500 become accounts "properly chargeable" against Gallatin county, all due and unpaid March 14, 1894? What facts made them the bases of properly chargeable accounts, unless they were included in the loan purported to have been made as charged in the complaint?

Whether accounts are properly chargeable against a county, under certain conditions, involves legal questions of considerable magnitude. But here the matter is solved by the pleadings. The complaint charges a pretended loan, and that the warrants were illegally issued to enable bonds to be sold to fund said loan. The answer not only affirmatively particularizes the warrants as correctly described by the complaint, but fails to specifically deny that the whole transaction was a loan of $30,000 and that it was the sums making up this $30,000, which, added to the divers other outstanding warrants made up the total outstanding debt of $45,000 or more. The pleadings, therefore, raised no issuable facts. The board of commissioners stood before the court as having assumed to borrow $30,000 in a single loan, and to issue warrants therefor, and as about to deliver bonds to fund this loan of $30,000, without ever having submitted any question to the electors, and obtaining their approval of their action. Thus, whether the borrowing was in good faith, or was fictitious, we need not dwell upon. In either event, it was wholly beyond the power of the board to incur any such liability without complying with the constitution and the law. As was said in *Hefferlin* v. *Chambers*, 16 Mont. 349, 40 Pac. 787:

" If we were to sustain the proposition of appellants in this case, it would be to allow county commissioners to expend more than $10,000, or incur an indebtedness or liability exceeding that sum, if they simply resorted to the evasion of dividing the total amount into several sums, each less than $10,000, and expending each of said several sums, or incurring each of said several liabilities, at different times. Under such construction they could expend $9,999 in each of several successive years, and the total of said amounts all for one pur-

pose.   If they could do this in each of several successive years, why not in each of several successive months or days ? It is clear that such conduct would be a gross violation of the constitutional provision, and that it was just such a violation as was contemplated by these appellants, and restrained by the district court.''

We are cited to *Hotchkiss* v. *Marion*, 12 Mont. 218, 29 Pac. 821.   There the county commissioners were about to issue bonds to fund outstanding warrants.   No question of a loan to create a debt upon which to base a bond issue entered into the case at all.   The court decided that under such circumstances the issuance of the bonds changes the form of the indebtedness, and was not the creation of a new debt or liability, within the constitutional prohibition.   The illegality of the debt was not involved.

The appellants devote much space in their briefs to the contention that the only remedy plaintiffs had was by appeal, under section 764, Fifth Division of the Compiled Statutes, from the action of the board in allowing the claims of the bank for the various sums aggregating $30,000.   We cannot agree to this.   Whatever may be the rule where the party has a claim or account against a county, and attempts to prosecute an action in debt, or even in tort, we hold that where a taxpayer, by proper showing, asks an injunction to restrain county commissioners from consummating a sale of county bonds, based upon an unconstitutional act, relief should be granted.   In such a case no exercise of discretion in a matter within the jurisdiction of the board arises.   Having no jurisdiction to incur any indebtedness in excess of $10,000, for any single purpose, without the approval of the electors, it followed in this case the board had no authority at all to make any such loan, or allow claims for any such loan, and their actions were a nullity.   (*Carroll* v. *Siebenthaler*, 27 Cal. 193.)

High on Injunctions, § 1251, cites the following as the doctrine to be applied :    '' While it is quite true that the administrative discretion of the board in the business affairs of the

county cannot be reviewed by a court, yet when the board undertake to do an act unauthorized by law a court will enjoin them, and this is the proper remedy. Boards have an administrative discretion within the law, but none without or against it. ''

It is urged that plaintiffs were not diligent in instituting this action. The warrants were issued March 15th. Suit was commenced May 28th, and before the bonds were delivered. These dates at once contradict any suggestion of lack of diligence.

There is clearly no misjoinder—which means an excess—of parties. Nor was there a defect of parties. The action being by taxpayers against the commissioners, to restrain the delivery of the bonds, and declare the proceedings of the board null and void, we cannot see how it was necessary that the banks be made parties. If they have rights, they are not prevented from enforcing them by appropriate remedy. (Pomeroy's Code Rem. § 418; Boone on Code Pl., § 51.)

The action was properly brought in the name of plaintiffs as taxpayers. (*Davenport* v. *Kleinschmidt*, 6 Mont. 502.)

Defendants are in no position to complain because judgment was entered against Chrisman, treasurer. Chrisman did not appeal in his own behalf. The court was authorized to enter judgment on the pleadings, upon Chrisman's default.

Appellants object to the extent to which the judgment went, in enjoining the execution or delivery of the particular bonds described in the complaint, or any bonds of Gallatin county, on account of said $30,000 of warrants issued to the Commercial Bank, complained of in the complaint. This relief extends no further than is necessary to protect plaintiffs, as taxpayers, against injury by issuing and delivering any bonds based upon the invalid warrants for $30,000 issued by the board.

From the foregoing opinion, upon the various points presented and relied upon, it follows that the judgment of the district court must be affirmed.                                    *Affirmed.*

PEMBERTON, C. J., concurs.