JENKINS, APPELLANT, *v.* NEWMAN ET AL., RESPONDENTS.

(No. 2,701.)

(Submitted May 3, 1909. Decided May 4, 1909.)

[101 Pac. 625.]

*Counties—Indebtedness—Constitutional Limitation—"Bridge"*
*—What Constitutes—Agreed Statement of Facts—Effect.*

Counties—Constitution—Indebtedness—Items not to be Considered.
    1.  The mileage and *per diem* of county commissioners charged to their county on account of trips made to the site of a bridge, and expenses incurred for services of the county surveyor in surveying and locating the site, are not proper items to be taken into consideration in arriving at the amount of indebtedness ($10,000) which could lawfully be incurred by the county, under section 5, Article XIII, of the Constitution, on account of the construction of the bridge, without first obtaining the approval of a majority of the electors of the county.

Same—Indebtedness—Constitutional Limit—Items to be Considered.
    2.  Where it becomes necessary to employ inspectors, other than county officers, in the construction of a bridge, the sums so expended must be regarded as a part of the aggregate cost of the project in arriving at the amount county commissioners may disburse without consulting the electors of their county.

Agreed Statement of Facts—Effect.
    3.  An agreed statement of facts upon which a cause was tried ·is of the same effect as a special verdict or finding of facts.

Counties—Indebtedness—"Bridge"—What Constitutes—Void Contract.
    4.  The commissioners of two counties entered into a contract for the construction of a bridge over a river separating them. The contract price was $19,998, and each county became obligated in the sum of $9,999. Without proper approaches, the cost of which would approximate $300, the bridge was useless, but the contract did not make any provision for them. Section 5, Article XIII, of the Constitution, declares that no county shall incur any indebtedness, for any single purpose, to an amount exceeding $10,000, without first obtaining the consent of a majority of the electors of the county. Under section 1416, Revised Codes, the word "bridge" includes the approaches thereto. *Held,* that the single purpose sought to be accomplished by the commissioners was the building of a bridge, with approaches thereto, and that, since that purpose could not be consummated without exceeding the constitutional limitation, the contract was void.

*Appeal from District Court, Yellowstone County, Sydney Fox,*
*Judge.*

ACTION by William D. Jenkins against C. H. Newman and others, as commissioners of Carbon and Yellowstone counties, to restrain said defendants from carrying out the terms of a cer-

tain contract. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

*Messrs. Miller & O'Connor,* and *George H. Simpson,* for Appellant.

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondents.

MR. JUSTICE SMITH delivered the opinion of the court.

On the ninth day of November, 1908, the boards of county commissioners of Yellowstone and Carbon counties entered into a written contract with William S. Hewett and Arthur L. Hewett, copartners doing business as the Security Bridge Company, for the construction of a bridge across the Yellowstone river to connect the two counties. This action was brought by the plaintiff, a taxpayer in both counties, to restrain the defendants from carrying out the terms of said contract, and to enjoin the county commissioners "from allowing any bill or ordering any county warrant to be drawn for or on account of any matter or thing arising from or growing out of said contract." The cause was tried on an agreed statement of facts to the district court of Yellowstone county, sitting without a jury. That court adjudged the contract to be "a valid and subsisting obligation," and refused the injunction. From such judgment plaintiff has appealed.

It appears that the contract price of the bridge was $19,998, and it was assumed by counsel at the argument that each county became obligated in one-half of that sum, or $9,999. Although this does not clearly appear from the terms of the contract itself, we shall assume it to be true. The contract provides, among other things, as follows: "It is hereby mutually understood and agreed that all work to be done in constructing said bridge, and all material to be furnished therefor, shall conform strictly to the plans and specifications marked 'Plan No. 1,' which are hereto annexed and made a part of this contract; provided, how-

ever, that in case the parties of the second part (the commis-·
sioners) shall desire any alterations in the work as specified, or
any additional work done in connection with the building of said
bridge other than is hereby contracted for, they may have such
alterations made or additional work done, upon giving reason-
able notice in writing to the parties of the first part." It is then
provided that, in case any dispute shall arise "as to the amount
due  *  *  *  for additional work done or materials furnished
other than is provided for in said specifications," such dispute
shall be submitted to arbitration. It is recited in the agreed
statement of facts that the county commissioners have already
charged to their respective counties certain sums for mileage and
*per diem* on account of trips made to the prospective site of the
bridge for the purpose of selecting the site, and that the county
surveyors have rendered services in surveying and locating the
site, for which they have presented claims against the counties
for amounts aggregating $167.85. It is also set forth that the
contract provides for inspection of the work as it progresses, and
that such inspection will result in indebtedness against the coun-
ties. The plans and specifications mentioned in the contract have
not been made a part of the record in this court, and do not ap-
pear to have been before the district court. Paragraphs 5 and
6 of the agreed statement of facts are as follows: "(5) That
the contract in plaintiff's complaint mentioned does not provide
for the building of any approaches to said bridge; that proper
approaches will be necessary before said bridge can be used for
public travel; and that their cost will approximate the sum of
$300. (6) That the question or proposition of building said
bridge, or of expending any money therefor, has not been sub-
mitted to the electors of either of said counties."

It is contended that the contract is void for the reason that the
county commissioners have failed to observe the provisions of
that portion of Article XIII, section 5, of the state Constitu-
tion, which reads as follows: "No county shall incur any in-
debtedness or liability for any single purpose to an amount
exceeding ten thousand dollars ($10,000), without the approval

of a majority of the electors thereof, voting at an election to be provided by law.''

1. It is argued on the part of the appellant that the sums charged for mileage and *per diem* of the commissioners, and the expenses of county surveyors, should be added to the contract price in arriving at the amount of indebtedness incurred on account of the construction of the bridge. We do not regard this point as well taken. Necessary services of county officers, as such, devoted to a project which the county has in hand are a part of their ordinary duties, and should not be considered in arriving at the cost of the undertaking.

2. If it should become necessary, in carrying out the terms of the contract, to employ inspectors other than county officers, sums expended for that purpose should be regarded as a part of the aggregate cost of the project.

3. As the plans and specifications for the bridge are not before us, and were not before the district court, it cannot be said that the court found as a fact, or concluded as matter of law, that the Security Bridge Company undertook to construct the approaches as a part of their contract to build the bridge. Therefore we must give paragraph 5 of the agreed statement of facts its full import, to the effect that the contractors did not obligate themselves to build the approaches, and that an additional expenditure of approximately $300 will be necessary in order to complete the bridge, with its approaches. The agreed statement of facts is of the same effect as a special verdict or finding of facts. (*Hartman* v. *Smith,* 7 Mont. 19, 14 Pac. 648; 1 Ency. of Pl. & Pr. 386.) The language of the Constitution is: ''No county shall incur any indebtedness or liability for any single purpose,'' etc. Section 1416, Revised Codes, declares: ''The word 'bridges' in this Act includes the approaches thereto. * * * '' We therefore have no hesitancy in holding that the single purpose which the county commissioners of Yellowstone and Carbon counties undertook to accomplish was the construction of a bridge with the approaches thereto; and, as the contract price for the bridge alone was within two dollars of the

amount authorized to be expended for the whole purpose, the commissioners had no power to bind the counties by entering into such contract, for the reason that their purpose in its entirety could not be consummated without exceeding the constitutional limitation. The agreed statement of facts clearly shows that, after $19,998 has been expended, the purpose in mind will be but partially realized, and that an additional expenditure will be necessary in order to complete it. This method of procedure may not be pursued. (*Hefferlin* v. *Chambers,* 16 Mont. 349, 40 Pac. 787; *Hoffman* v. *Board etc.,* 18 Mont. 224, 44 Pac. 973.)

4. Again, it is contended that the clause of the contract providing that the commissioners may elect to have additional work performed and material furnished vitiates the same. We cannot say from the contract itself that either county will see fit to exercise this option, and there is nothing in the agreed statement of facts to indicate that the commissioners threaten or propose to take advantage of it. We therefore content ourselves with the observation that what cannot legally be done directly may not be accomplished by indirection, and that any resort to the evasion of dividing up the amount sought to be expended would undoubtedly lead to disastrous consequences.

The judgment of the district court is reversed, and the cause is remanded, with directions to issue a permanent injunction in accordance with the views herein expressed.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.