PANCHOT, Appellant, *v.* LEET, County Treasurer, Respondent.

(No. 3,602.)

(Submitted February 8, 1915. Decided February 23, 1915.)

[146 Pac. 927.]

*Counties—Taxation—High Schools—Public Expenditures—Constitutional Limit—Approval by Electors—Implied Approval—Special Funds—Indebtedness.*

Taxation—When Power not Existent.
   1. A public agency may not, by taxation or otherwise, raise funds which it has no authority to expend.
   [As to the purposes for which the power of taxation may be asserted, see note in 8 Am. St. Rep. 506.]

Counties—Taxation—High School Purposes—Limit of Expenditure Without Approval of Electors.
2. *Held,* that a levy for the purpose of erecting a county high school building which would raise in excess of $40,000 was void where the approval of the expenditure by the electors had not first been secured, as required by the provision of section 5, Article XIII, Constitution of Montana, that no county indebtedness or liability for any single purpose in excess of $10,000 shall be incurred without the approval of a majority of the electors voting at the election called for that purpose.

[As to equity jurisdiction of election contests relating to taxation, see note in Ann. Cas. 1912C, 691.]

Same—High Schools—Erection of Building—Compulsory Duty of Trustees.
3. *Quaere:* Upon the creation of a county high school under Chapter 76, Laws of 1913, is it the absolute duty of the board of trustees to forthwith erect a high school building?

Same—Compulsory Expenditures—Constitutional Limit.
4. If Chapter 76, Laws of 1913, makes it compulsory upon the board of high school trustees to forthwith erect a high school building after a favorable vote on the question of the establishment of such a school, the cost of which building exceeds the sum of $10,000, it is invalid in this respect, since the legislature is without power to compel the expenditure of an amount of county funds in excess of such amount (Art. XIII, sec. 5, Const.) without the previous approval of the electors.

Same—Expenditures Beyond Constitutional Limit—Implied Approval by Electors.
5. By voting for the establishment of a county high school, the electors did not impliedly authorize the expenditure of an unknown sum in excess of the constitutional limit of $10,000, *supra,* for the erection of a building, to be raised by a levy sought to be enjoined.

Same—Public Expenditures—Special Funds—Indebtedness.
6. *Held,* that by placing the funds sought to be raised by the levy referred to above, in a special fund to be used for building purposes only, the constitutional objection would not be obviated, since by the contemplated expenditure thereof, in the construction of a high school building, a contract liability for a single purpose in excess of $10,000 would necessarily be incurred without the approval of the electors.

*Appeal from District Court, Chouteau County; Jno. W. Tattan, Judge.*

APPLICATION by John D. Panchot against W. R. Leet, as treasurer of Chouteau county, for injunction to restrain the collection of a tax. From an order denying a temporary injunction, plaintiff appeals. Reversed and remanded.

*Messrs. Galen & Mettler,* for Appellant, submitted a brief; *Mr. Albert J. Galen* argued the cause orally.

*Messrs. Stranahan & Stranahan,* for Respondent, submitted a brief; *Mr. James A. Walsh,* of Counsel, *Mr. F. E. Stranahan* and *Mr. Walsh* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The appellant, a citizen of Chouteau county and a taxpaying owner of real and personal property therein, avers: That at the regular school election of 1914 there was submitted to the qualified electors of Chouteau county the question whether bonds of said county should be issued to the amount of $50,000 for the purpose of procuring a site and erecting a building for the county high school theretofore established; that a decisive vote was cast against said proposition; that, notwithstanding this expression of the popular will, and in order to thwart the same, the board of county high school trustees, on August 8, 1914, made and transmitted to the board of county commissioners a certified estimate of the rate of tax required to raise the amount desired for the purchase of a site and the construction of a county high school building, and fixed the levy for such purpose at five mills, which levy was accordingly made by the board of county commissioners; that the entire assessed valuation of Chouteau county for the year 1914 is the sum of $8,194,492, and said levy of five mills will raise in excess of $40,000, which sum it is proposed to devote to the purpose mentioned, although no consent to the expenditure of any moneys for such purpose has been procured from the electors of said county; that the respondent, as county treasurer of Chouteau county, threatens to enforce collection of said tax so levied. Upon these and certain minor facts set forth in his complaint, the appellant sought a temporary injunction from the district court to restrain the collection of the tax. This was denied, and from the order of denial this appeal is taken. It is conceded on both sides that but one question is presented; *viz.,* whether, upon the facts stated, the tax in question is void.

It is indisputable that the board of county commissioners has no power to make, of its own motion, a levy of taxes for county high school purposes. The establishment of county high schools, the maintenance of them, and the erection of buildings therefor, are governed wholly by the provisions of Chapter 76, Laws of 1913, from which it is perfectly clear that the initiative in the

matter of raising funds lies wholly with the board of high school trustees. The latter, however, are authorized to estimate "the amount of funds needed for building purposes" and "the rate of tax required to raise" such amount; and, when this has been properly done and certified to the county commissioners, a levy must be made. The validity of the levy in question is therefore to be determined by the power vested in the board of high school trustees.

The contention of the appellant is that the levy in question is [1] void because the funds sought to be raised thereby cannot be lawfully expended by the board of trustees. This contention must be sustained if the premise be correct; for, though the trustees may cause a levy of taxes to raise funds "needed for building purposes," and though it be colloquially correct to say that funds required for the erection of a public structure are needed for building purposes, yet it would be absurd to hold that money can be needed, in any legal sense, for a given public purpose, if it cannot, under the circumstances, be expended for such purpose. Indeed, we take it to be axiomatic that a public agency may not, by taxation or otherwise, raise funds which it has no authority to expend. (*Carlson* v. *City of Helena,* 39 Mont. 82, 106, 17 Ann. Cas. 1233, 102 Pac. 39.)

The question, then, is whether the board of trustees can expend the moneys sought to be raised by the levy in question. [2] Section 5, Article XIII, of the Constitution provides that: "No county shall incur any indebtedness or liability for any single purpose to an amount exceeding $10,000 without the approval of a majority of the electors thereof, voting at an election to be provided by law." In *Hefferlin* v. *Chambers,* 16 Mont. 349, 40 Pac. 787, it was expressly held that by this provision: "The Constitution intended to limit the powers of the commissioners, as to an expenditure for a single purpose, to a certain figure, unless they obtained the approval of the people for such expenditure." The fact that the expenditure here involved is not to be set aside by the commissioners in nowise alters the situation, because the limitation is addressed to the county. By the

terms of Chapter 76, Laws of 1913, a county high school can be created only by the county; its trustees are a county agency; property acquired for its purposes is county property; and any obligation incurred in its behalf is a county obligation. The object of the levy in question, therefore, is to raise funds for a county purpose, which can be carried out only by contract. In other words, a liability is to be incurred which, in the end, is to involve an expenditure in excess of $40,000. To say that such a transaction does not require the previous authorization of the people is to ignore the plain language of the constitutional provision above recited.

The respondent suggests, however, that as the erection of a [3, 4] high school building is made compulsory on the board of trustees by the general school law, there is a grave question whether the constitutional inhibition applies to an expenditure for such a purpose, and they argue that, when the electors of Chouteau county voted to establish the school, "they voted their approval of the levy of a tax, or, if you please, of an indebtedness or liability for building purposes in any amount not exceeding ten mills on the dollar annually of the assessed value of the county," which the board might see fit to require. We shall not pause to consider, further than to doubt, whether, the legislature ever intended that, upon the creation of a county high school, it should be the absolute duty of the board to forthwith, and under all circumstances whatever, erect a high school building. There are sections of the Act which indicate an alternative, and no such intention is to be imputed to the legislature if its execution would otherwise involve an infringement of the Constitution. The distinction between voluntary and compulsory indebtedness has been commonly invoked in cases where an excess of the constitutional limit is claimed, and it is the settled rule that liabilities arising from tort, being compulsory, are not to be considered in computing the public indebtedness in such cases. The same principle has likewise been applied in Washington and elsewhere to obligations and expenditures commanded by the Constitution itself. (*Rauch* v. *Chapman,* 16 Wash. 563,

58 Am. St. Rep. 52, 36 L. R. A. 407, 48 Pac. 253.)    Neither con-sideration, however, compels the view that a thing forbidden by the Constitution can be made compulsory by mere legislation, or that the legislature can absolve any public agency from the re-strictions of the Constitution.    On the contrary, the Constitution is to be read into every statute by which a duty is imposed upon public agencies, and, if the duty is to do a thing which cannot be done without first obtaining the consent of the electors, then manifestly it becomes a part of that duty to get such consent.

The argument that when the voters of Chouteau county sanc-[5]    tioned the establishment of the county high school they thereby authorized the expediture of more than $40,000 for build-ing purposes, to be raised by the levy in question, is plausible, but specious.    It is founded upon the assumption that the im-mediate erection of a building to cost more than $10,000 is neces-sarily implied from the establishment of the school.    There is no such implication.    The establishment of a county high school does, indeed, require that the trustees make suitable provision for carrying it on, to which end they may contract "for the use of suitable buildings  *  *  *  for such time as may be deemed best for the interests of the county''; and it does assume that they will, "as soon as practicable," proceed to select and acquire a site, purchase materials, and let such contracts for necessary school buildings as they may deem proper.    "They shall not, however, make any purchase or enter into any contract where-by obligations are assumed in excess of the amount of funds on hand or available through the levy of taxes for the current year or the issuance of bonds."    Must the elector who votes to estab-lish a county high school take note of these provisions and infer from them that the board will forthwith incur a liability or expend an unknown sum in excess of $10,000 for the erection of a costly building, without further consulting him?    He knows that an issue of bonds to raise funds for such purpose cannot be uttered without his express assent.    Must he assume that taxes for such purpose will nevertheless be laid?    Or may he be sup-posed to infer that, since the powers of the board are limited by

the Constitution, no expenditure in excess of $10,000 without his consent could "be deemed for the best interests of the county," that "as soon as practicable" means after he has consented, and that, until he consents, no such sum will be regarded as "available" through taxation? We are cited to a number of decisions, including several from this court, to support the proposition that "every power necessary to excute the power expressly granted is necessarily implied." That has always been the law in this state; but it has no relevancy here, because, in our view, the power to expend a sum in excess of $10,000 for building purposes without the express authorization of the electors is no more necessary to carry into effect the establishment of a county high school than the erection of a courthouse, under similar circumstances, is necessary to effectuate the establishment of a county.

Respondent's last contention on the merits is that by getting the money in hand, through the levy in question, a special fund [6] is created which can be used for no other purpose than the construction of a high school building, and that an obligation payable solely out of a special fund in hand is not a liability within the meaning of the constitutional provisions fixing the limit of county indebtedness. As applied to the case at bar, this contention not only assumes that a special fund can be created when there is no authority to expend it, but it ignores the distinction between the provision against expenditures exceeding a certain sum for a single purpose and the restriction upon the amount of indebtedness. Whether the obligations to be created by the construction of the high school would or would not be an indebtedness within the meaning of the restriction upon the amount of indebtedness, the fact remains that, if the building is to be constructed, a contract liability must be incurred for that purpose, and, if the funds sought by the levy are to be paid for such construction, there must be an expenditure of more than $40,000 for that purpose.

A dismal picture is presented of the confusion which will ensue if the approval of the electors must be had every time the county proposes to expend $10,000 or more; and, as an example of such

confusion, it is said: "Assuming the statement made by the press to be true that Silver Bow expended last year more than $100,000 on her poor, then it must be that such expenditure was unlawful, unless it followed upon a vote of the people, which probably did not take place." The only confusion suggested by this is a confusion of thought; for it is perfectly obvious that the distribution of various amounts for the relief of various indigent persons, even though the aggregate exceed $10,000 taken from the county poor fund, is in nowise analogous to the expenditure of a sum certain for the single purpose of erecting a public building. The first is a distribution, founded on a duty expressly imposed, to meet an ever-present condition encountered in the regular and normal functioning of the county; the second is an expenditure, founded on a liability for a single, occasional purpose, forbidden under certain conditions. Such examples and similar arguments have, however, been advanced from time immemorial, to avoid some constitutional requirement. Under them any expenditure might be justified, any official act defended, and every safeguard designed to protect the public from prodigality be consigned to the limbo of political delusions. Happily, no such thing is possible, as yet. The Constitution still stands "mandatory and prohibitory," and section 5 of Article XIII is still intended to limit the power of every county, through any agency whatever, as to an expenditure for a single purpose to a certain figure, unless the approval of the people for such expenditure has been previously secured.

A question of practice has also been raised, but we do not deem it of sufficient importance to merit discussion.

The order appealed from is reversed, and the cause is remanded to the district court of Chouteau county, with directions to grant the temporary injunction.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied March 11, 1915.