STATE EX REL. TURNER, APPELLANT, *v.* PATCH ET AL.,
RESPONDENTS.

(No. 5,101.)

(Submitted October 10, 1922.  Decided November 4, 1922.)

[210 Pac. 748.]

*Counties—Road  Work—Indebtedness—Constitutional  Limitation—"Single Purpose"—Definition.*

Counties—Indebtedness — Constitutional Limitation — "Single Purpose" — Definition.
1. *Held,* that the words "single purpose" as used in section 5 of Article XIII, of the state Constitution, providing that "no county shall incur any indebtedness or liability for any *single purpose* to an amount exceeding $10,000 without the approval of a majority of the electors thereof," mean a project or undertaking, the elements entering into which are so related that when combined they constitute an entity—something complete in itself, but separate and apart from other objects.

Same—Roadwork—Indebtedness—Warrants—"Single  Purpose" — Constitution.
2. Under the above rule, *held* that county indebtedness evidenced by warrants issued in payment of separate contracts for the construction, repair, improvement and maintenance of certain portions of the public roads and bridges at different and widely scattered places in a county containing more than 2,000 square miles and having 312 established public roads extending over every part of the county, did not constitute an indebtedness for a "single purpose" or undertaking within the meaning of section 5, Article XIII, of the Constitution, even though the different points at which the work was done were connected by its public roads; *held,* further, that each piece of work, the cost of none of which exceeded $10,000, was an entity in itself, and that therefore warrants issued in payment therefor were not void, the contention on application for injunction that all of the county roads constituted a single system and that therefore warrants issued for work done on all of them combined was an indebtedness for a single purpose in excess of $10,000 being without merit.

Same—County Commissioners—Indebtedness—Evasion of Constitutional Inhibition.
3. County commissioners may not, by making arbitrary or artificial divisions of road work which manifestly constitutes but one project, and by issuing separate warrants to separate contractors for separate units thus created, evade the prohibition of section 5, Article XIII, of the Constitution.

*Appeal from District Court, Roosevelt County; C. E. Comer, Judge.*

ACTION by the State of Montana, on the relation of Fred Turner, for an injunction directed to R. E. Patch and others,

as the Board of County Commissioners, County Clerk, and County Treasurer of Roosevelt County. From an order refusing a permanent injunction and from one dissolving a temporary one, plaintiff appeals. Affirmed.

Cause submitted on briefs of Counsel.

*Mr. Harrison F. McConnell,* for Appellant.

*Mr. Frank M. Catlin,* for Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the Court.

During the period from January 1, 1919, to July 31, 1921, the county commissioners of Roosevelt county procured work and labor to be done and materials to be furnished in the construction, repair, improvement and maintenance of the public roads and bridges in that county, and in payment therefor issued warrants in the aggregate · amount of $113,000. On August 1, 1921, interest on these outstanding warrants had accumulated to an amount more than $10,000, and at that time there was in the road fund a sum not to exceed $21,000. To meet the situation, the commissioners directed the application of the funds on hand to the redemption of warrants and resolved to issue funding bonds to the amount of $104,000 to be exchanged for the balance of the warrants. Thereupon Fred Turner, a resident of and taxpayer in Roosevelt county, instituted this action to enjoin the issuance of the bonds. A temporary injunction was granted, as was also an order to show cause why the injunction should not be made permanent. In their answer the defendants set forth in detail the work that had been done and the amount of the warrant issued in payment of every item thereof, and disclosed that in no instance did the liability for a single contract or piece of work exceed $6,000. After a hearing the district court refused a permanent injunction, and at the same time dissolved the in-

junction which had been issued, and relator appealed from each order.

The right of the commissioners to issue funding bonds to be exchanged for valid warrants is not questioned, but it is insisted that all of the warrants above $10,000 worth are invalid, and that bonds above that amount, if issued, will be likewise illegal, and as a foundation for that contention the provision of section 5, Article XIII, of our Constitution is invoked, as follows: ''No county shall incur any indebtedness or liability for any *single purpose* to an amount exceeding ten thousand dollars ($10,000) without the approval of a majority of the electors thereof, voting at an election to be provided by law.''

It is the contention of relator that all of the public roads [1, 2] of Roosevelt county constitute a single system; that work done upon these roads, though distributed generally over the county, constitutes a single undertaking; and that by issuing warrants in payment for the work so done the county incurred an indebtedness or liability for a single purpose, and since the amount of the warrants exceeded $10,000 and an election authorizing the commissioners to issue the warrants was not held, the excess warrants over $10,000 are illegal and void.

The full force and effect of this contention becomes apparent in the light of the fact that Roosevelt county contains more than 2,000 square miles of territory; that it has 312 duly established public roads, the total mileage of which is not given, and that one of the great transcontinental highways, the Roosevelt Trail, crosses the county from east to west for a distance of more than ninety miles; that these roads extend to every part of the county; and that the work for which the warrants were issued was done at different places upon these different roads and under different contracts.

Stated in a somewhat more concrete form, it is the contention of relator that the commissioners cannot legally issue warrants to an amount exceeding $10,000 in any one year in payment for the repairs, improvements, extensions and main-

tenance of all the roads in the county without being first duly authorized to do so by a vote of the qualified electors, but just why counsel for relator limits the right to any one year is not apparent, for, if his premise is correct, it is altogether immaterial whether the warrants are issued during one year or during several years. (*Hefferlin* v. *Chambers,* 16 Mont. 349, 40 Pac. 787.)

A single example will suffice to emphasize the contention: Assume that by reason of unprecedented high waters the roads within the county converging at Mondak are so far washed out and destroyed that it will cost $9,000 to repair them; it will be conceded that the commissioners may contract to have the work done and may issue warrants in payment, if funds are not available. Now, if at a later time the roads converging at Lohmiller—a distance of ninety miles from Mondak—are also destroyed to such extent that it will cost $1,100 to repair them, the commissioners may contract for the work to the amount of $1,000, but, when that limit is reached, work must be suspended until an election is held and authority obtained to incur the additional liability of $100, or, in other words, the taxpayers must be put to an expense of $2,000 or $3,000 for a special election to determine whether an indebtedness of $100 may be incurred. The bare statement of the proposition is a sufficient demonstration of its absurdity; but, even though it may appear absurd, if a fair construction of the constitutional provision above leads to that conclusion, it may not be avoided. However, we are satisfied that the provision does not admit of a construction which leads to any such result.

There is not any other state in the Union which has in its Constitution a limitation similar to the one quoted from section 5, Article XIII, above. That provision has been before this court, but the consideration given to it does not aid materially in the determination of the question now at issue.

In *Hefferlin* v. *Chambers,* above, it was held that a liability incurred for grounds, plans, supervision, and the erection of a courthouse was a liability incurred for a single purpose, and, if it exceeded $10,000, it could not be contracted with-

out a favorable vote of the electors, even though the total liability was represented by different contracts, each for a sum less than $10,000.

In *Hoffman* v. *Gallatin County Commrs.*, 18 Mont. 224, 44 Pac. 973, it was held that, where the county assumed to borrow $30,000 at one time, though in loans of $10,000, $10,000, $7,500, and $2,500, and issued warrants therefor in corresponding amounts, and then sought to refund the warrants with bonds without submitting the proposition to a vote of the electors, the transaction was void under the constitutional provision now before us, and that splitting the loan was a mere device for avoiding the prohibition.

In *Jenkins* v. *Newman*, 39 Mont. 77, 101 Pac. 625, it was held that the necessary approaches to a bridge are a part of the bridge itself, and a liability incurred for the complete bridge was a liability incurred for a single purpose, and, if the cost exceeded $10,000, the limitation in the Constitution could not be avoided by letting one contract for the bridge structure and another for the approaches, each less than $10,000 in amount.

In *Panchot* v. *Leet*, 50 Mont. 314, 146 Pac. 927, it was held that a county could not incur an indebtedness of $40,000 for the construction of a high school building without the approving vote of the electors, even though the debt was to be met by a tax levied for that purpose.

In not one of these cases was it necessary for the court to define the terms "single purpose" as employed in the Constitution, and no attempt at a definition was made.

The debates of the constitutional convention disclose that this particular provision did not arouse much discussion. It was drafted by a committee, and in its present form was reported to the convention with the other provisions found in Article XIII. When it was reached in the consideration of the article, an attempt was made to increase the limit from $10,000 to $15,000, but it was not successful. Some suggestions were made, however, which indicate in a measure the prevailing view. One member urged that the commissioners

ought to be permitted to construct a bridge, without a vote of the electors, even though the liability incurred should exceed $10,000. Another member inquired whether under the limitation a county might not find itself unable to function, if its revenues became depleted, and referred particularly to the conduct of the courts in criminal matters. The convention did not agree with the first member and indicated that, if the commissioners sought to construct a bridge and incur a liability of more than $10,000, a favorable vote of the electors must be had. In response to the inquiry of the second member it was suggested, and the suggestion approved, that a liability incurred for court expenses would be distributed among jurors' fees, witness' fees and the like, no one item of which would ever likely exceed $10,000, but it was said that the provision would prevent the commissioners incurring an indebtedness of more than $10,000 for fuel, or for light, without submitting the proposition to a vote. These discussions do not go further than to indicate that the members were endeavoring to employ words in their ordinary sense, and in the absence of the debates we would invoke the rule of construction which would lead to the same end. (*State ex rel. Rowe* v. *Kehoe,* 49 Mont. 582, 144 Pac. 162.)

The word "single" is defined as: one only; being a unit; alone; detached; one which is abstracted from others. (Webster's International Dictionary; Century Dictionary.) "Purpose" means that which a person sets before him as an object to be reached or accomplished; an end, intention or aim. (*Ex parte McCoy,* 10 Cal. App. 116, 101 Pac. 419; 4 Words & Phrases, Second Series, 69.) The synonyms are: end, aim, object, plan, proposition, project. (Standard Dictionary; Crabb's Synonyms.)

According to approved usage, then, the words "single purpose" convey to the mind the idea of one object, project or proposition—a unit isolated from all others. In other words, to constitute a single purpose, the elements which enter into it must be so related that, when combined, they constitute an

entity; something complete in itself, but separate and apart from other objects.

In the light of this construction of the language employed in our Constitution, it cannot be said that the commissioners of Roosevelt county exceeded their authority in disposing of their county roadwork in the manner indicated. We do not [3] mean to intimate that commissioners may, by making arbitrary or artificial divisions of work which manifestly constitutes but one project, and by issuing separate warrants to separate contractors for separate units thus created, evade the prohibition of the Constitution, but we do say that in no proper sense of the terms can it be held that, as applied to this roadwork, a culvert at Mondak, a cut at Froid, a fill at Culbertson, the removal of an obstruction at Poplar, the repair of a defect at Wolf Point, and the leveling of the surface at Bainville constitute one project, or that warrants severally issued for these separate pieces of work represent an indebtedness or liability for a single purpose, even though these points are all connected by the public roads of the county.

The orders are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES FARR, COOPER and GALEN concur.