MISSOULA COUNTY FREE HIGH SCHOOL ET AL., APPEL-
LANTS, *v.* SMITH ET AL., RESPONDENTS.

(No. 6,863.)

(Submitted December 12, 1931. Decided February 11, 1932.)

[8 Pac. (2d) 800.]

*Mr. Harry H. Parsons* and *Mr. E. C. Kurtz*, for Appellants.

*Mr. Donovan, Worden, Mr. E. C. Mulroney, Mr. Walter L. Pope* and *Mr. J. C. Garlington*, for Respondents.

MR. JUSTICE FORD delivered the opinion of the court.

This action was brought by plaintiffs, taxpayers of Missoula county, to enjoin defendants, members of the board of county high school trustees, and the contractor engaged in the construction of an addition to the Missoula county high school building, from proceeding further with the building and from paying out any of the moneys or funds in the possession of the county treasurer, who is also a defendant in the action, under and by virtue of a contract for the construction of such building.

Upon the filing of the complaint, an order to show cause issued, and, upon a hearing had, an order dismissing the proceedings was made and judgment of dismissal duly entered, from which plaintiffs appeal.

It appears from the record that the school in question is a county high school and the board a board of trustees of the Missoula county high school. The complaint alleges that at an election held in the county the electors voted a sum in excess of $150,000 to provide funds with which to construct an annex to the county high school building; that the proceeds of the bond issue were received and deposited with the county treasurer, and that the funds are available for expenditure for the purpose mentioned; that the board duly and regularly prepared certain definite and specific plans and specifications for the building and structure to be erected; and that notice was published calling for bids and proposals to construct such annex in accordance with the plans and specifications. It is alleged that a number of persons made bids, which were

opened and considered, and it was found that defendant High-tower was the lowest responsible bidder for the work, and his bid of $134,736 was accepted by the board on November 1, 1930; that, after the bid had been accepted and the contract with Hightower became final, a written instrument was executed by Hightower and the board which provided for certain changes, omissions, and alterations in the work to be done, which did not conform to the original specifications and reduced the original contract price to the extent of approximately $24,000, enumerating in detail the alterations and changes proposed to be made; and that defendants propose to proceed, not according to the original contracts, but under the written memorandum.

It is further alleged that the contract provided that, other things being equal, the contractor should employ local labor and purchase material from local materialmen, and that the contractor had neglected and refused to comply with that provision of the contract to the loss and damage of the taxpayers, and that, unless restrained by the court, the board and county treasurer would pay to the contractor the moneys and proceeds of the bond issue in excess of $100,000.

The answer admits that the electors of the county authorized the bond issue for the purpose set forth in the complaint; the sale of the bonds, the approval of the plans and specifications, the advertising for bids, and acceptance of the bid of Hightower. It is alleged that a part of the specifications prepared by the architect, known as the "General Conditions of Contract," contained a provision which authorized the board to make changes in the specifications by altering, adding to, or deducting from the work; the contract sum being adjusted accordingly. It is then alleged that, after the acceptance of the bid of Hightower, the board considered it possible that thereafter and during the progress of construction they might desire to make changes in the work in accordance with the provisions of the specifications authorizing alterations, additions or deductions, and considering and deeming it to the advantage of the county that any change or reduction in the total price

payable to the contractor which might result from any change which the board might be likely to make pursuant to its right, should, so far as possible, be ascertained, estimated, accepted and agreed upon in advance in order that subsequent disputes with the contractor with respect thereto might be avoided, that the board entered into the written memorandum referred to in the complaint under the terms of which it was agreed that, if the board should thereafter order any of the enumerated changes, the contractor would reduce and diminish the contract price by specific amounts enumerated, and that whether possible changes in the construction should be made was by the terms of the agreement left solely within the discretion of the board. Defendants alleged that the contractor had entered upon the performance of the contract and had completed approximately one-eighth of the work called for and had fulfilled the terms of the contract, including those relating to the purchase of local materials and the employment of local labor.

Upon the hearing there was evidence tending to show that the alterations, if made, would work no change in the structural strength of the building or in its usefulness or serviceability. There was no evidence that the amounts agreed upon to be deducted were not fair or reasonable. The evidence also showed that with two exceptions the board had taken no action with respect to ordering any of the possible changes made.

Plaintiffs contend that the provisions of section 1016, Revised Codes of 1921, apply to boards of trustees of county high schools, and, since substantial alterations and changes were made in the building without bids therefor having been called for pursuant to the provisions of that section, that the entire contract was void and further performance thereof should be enjoined; while defendants contend that section 1016, supra, has no application and there is no statute requiring the board to advertise for bids, and, in consequence, it was not required to advertise for bids for proposed alterations or changes in the original contract.

In the absence of statute, defendants were not required to let the contract in question under competitive bidding.

(*State ex rel. Lambert* v. *Coad,* 23 Mont. 131, 137, 57 Pac. 1092; 2 McQuillin on Municipal Corporations, 2d ed., sec. 1288, p. 862; 44 C. J. 99; *Lee* v. *City of Ames,* 199 Iowa, 1342, 203 N. W. 790; *Village* v. *American Surety Co.,* 218 Ill. App. 608; *Los Angeles Gas & Elec. Corp.* v. *Los Angeles,* 188 Cal. 307, 205 Pac. 125; *Henderson* v. *City of Enterprise,* 202 Ala. 277, 80 South. 115; *Vermeule* v. *City of Corning,* 186 App. Div. 206, 174 N. Y. Supp. 220; *Elliot* v. *Minneapolis,* 59 Minn. 111, 60 N. W. 1081; *Merritt* v. *Hughes,* 175 Minn. 30, 220 N. W. 164; *Bunker* v. *Hutchinson,* 74 Kan. 651, 87 Pac. 884.)

Section 1016, supra, provides: "It shall be unlawful for any school trustee to have any pecuniary interest, either directly or indirectly, in the erection of any schoolhouses, or for warming, ventilating, furnishing, or repairing the same, or be in any manner connected with the furnishing of supplies for the maintenance of the schools, or to receive or to accept any compensation or reward for services rendered as trustees, except as hereinbefore provided. No board of trustees shall let any contract for building, furnishing, repairing, or other work, for the benefit of the district, where the amount involved is two hundred and fifty dollars, or more, without first advertising in a newspaper published in the county for at least two weeks, calling for bids to perform such work and the board shall award the contract to the lowest responsible bidder; provided, however, that the board of school trustees shall have the right to reject any and all bids."

The determinative question is whether the provisions of section 1016, supra, apply to county high schools.

Section 1016 was adopted in 1895, and in its original form contained only the first sentence of the section as it now stands (sec. 1802, Pol. Code 1895), and was carried into the 1907 Codes without change as section 882. This section remained in its original form until amended to read as it now does, by Chapter 32, Laws of 1909. In 1913 there was a complete revision and codification of the general school laws of the state. (Chap. 76, Laws of 1913.) Chapter 32, Laws of 1909, was re-enacted as section 509 (Chap. 5), and became section 1016,

Revised Codes of 1921. Chapter 5, supra, has to do with the powers and duties of trustees of school districts.

The first County High School Act was substituted for House Bill No. 69, Laws of 1899, which was superseded by Chapter 29, Laws of 1907, appearing as sections 918 to 938, inclusive, of the Revised Codes of 1907, and with various amendments and additions was included in the Codification Act of 1913 and carried into the Revised Codes of 1921, with amendatory Acts, as sections 1262 to 1301, inclusive, and appeared as Chapter 21 (secs. 2100 to 2115) of that Act, and relates to county high schools.

In the case of *Panchot* v. *Leet,* 50 Mont. 314, 146 Pac. 927, 929, this court had under consideration Chapter 76, supra, and it was held that "a county high school can be created only by the county; its trustees are a county agency; property acquired for its purposes is county property; and any obligation incurred in its behalf is a county obligation." Again, in *State ex rel. Henderson* v. *Dawson County,* 87 Mont. 122, 286 Pac. 125, 129, referring to the Act of 1899, we said: "Under this Act it would seem the legislature intended to make such a high school a county institution in all essentials. * * * Control over these matters was later returned to the board of county commissioners * * * harmonizing the provisions relating to county high schools and making them more nearly county projects."

There is not any express statutory provision requiring the trustees of county high schools to let contracts such as the one before us under competitive bidding, unless the provisions of section 1016, supra, apply.

Section 1271, Revised Codes of 1921, as amended by Chapter 48, Laws of 1929, provides: "The Board of Trustees [of county high schools] shall have power and it shall be their duty: * * * 2. To proceed, as soon as practicable after their appointment and qualification, to select at the place designated as the location for county high school, the best site that can be obtained, and the title thereto, upon securing said site by purchase or otherwise shall vest in the county; the trus-

tees shall then proceed to make purchase of material and to let such contracts for necessary school buildings as they may deem proper. They shall not, however, make any purchase or enter into any contract, whereby obligations are assumed in excess of the amount of funds on hand, or available through the levy of taxes for the current year, or the issuance of bonds.''

In view of the history of the Acts under consideration it is manifest that, prior to the codification of our school laws in 1913 (Chap. 76, supra), the provisions relating to school districts were not applicable to county high schools; each operated under and was regulated by separate laws.

A careful examination of the laws relating to school districts and county high schools demonstrated that section 1016, supra, does not control trustees of county high schools. This section refers to the letting of contracts *"for the benefit of the district."* A county high school has never been referred to or treated as a district. Other sections make a clear distinction between the two classes of schools. The powers and duties of the boards of trustees of school districts are enumerated in detail in section 1015, Revised Codes 1921, as amended by Chapter 122, Laws of 1923, many of which provisions have no application to high school boards, while the powers and duties of boards of trustees of county high schools are defined in section 1271, Id., as amended by Chapter 48, Laws of 1929. The number, qualification, mode of election, etc., of trustees of school districts are provided for in Part 3, Chapter 78, of the Political Code (sec. 985 et seq.), which includes section 1016, relating to school contracts, while the method of appointment, qualification, organization, etc., of boards of trustees of county high schools is governed by the provisions of sections 1266 to 1272 of Chapter 101 of the Political Code. Further, section 1269, Id., provides in part: "The provisions of the general school law as to notice, time and place of meetings shall govern all county high school boards." This would seem to require an inference in accordance with the well-established principle of statutory construction, *expressio unius*

*est exclusio alterius,* that in all other particulars except those mentioned, it was intended that the general school laws should not have application to the functioning of a county high school board.

No change was made in section 882, Revised Codes of 1907, as amended by Chapter 32, Laws of 1909 (now section 1016) by its inclusion in Chapter 76, supra; that chapter was enacted for the purpose of codifying all laws with reference to public schools. The sections included within the chapter are subdivided and arranged by chapters and sections, so that sections 500 to 513, which include section 509 (now section 1016) relate to trustees of school districts, and to such trustees alone. While it is true that sections 2100 to 2115 (Chap. 21) of Chapter 76 refer to county high schools, this was done solely by way of codification.

Legislative intent to change the effect of statutes by codification must appear clearly, before the courts will adjudge a change. (*See* v. *Building Commr. of Springfield,* 246 Mass. 340, 141 N. E. 105; *Derinza's Case,* 229 Mass. 435, 118 N. E. 942; *Manson* v. *Village of Chisholm,* 142 Minn. 94, 170 N. W. 924; *State* v. *Knight,* 224 Mo. App. 760, 26 S. W. (2d) 1011; *Smith* v. *Birmingham Realty Co.,* 208 Ala. 114, 94 South. 117; *People* v. *Drake,* 162 Cal. 248, 121 Pac. 1006; *Strottman* v. *St. Louis etc. Ry. Co.,* 211 Mo. 227, 109 S. W. 769.) Here, legislative intent to change existing laws does not appear; on the contrary, it seems clear that the legislature intended to, and did, re-enact separate Codes for the regulation and control of district schools and county high schools, and, in consequence, the provisions of section 1016 have no application to trustees of the latter.

Since there was no statute requiring the letting of the contract in question under competitive bidding, defendant board was not obliged to advertise for bids before making changes, alterations and deductions in the original contract.

There is much force in counsel's argument that the public interest requires that contracts of this character be let under competitive bidding, but the answer is the legislature had

not so provided at the time this contract was made. Since the decision of the district court in this cause, the legislature has undertaken to provide for competitive bids in such cases. (Chap. 148, sec. 83, Laws of 1931.)

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, ANGSTMAN and MATTHEWS concur.