NELSON ET AL., APPELLANTS, v. JACKSON ET AL., RESPONDENTS.

(No. 7,266.)

(Submitted June 4, 1934. Decided June 23, 1934.)

[33 Pac. (2d) 822.]

300

Mr. *H. G. Rodgers* and *Mr. John Collins,* for Appellants, submitted a brief; *Mr. Collins* argued the cause orally.

Mr. *T. E. Gilbert,* County Attorney, *Mr. J. E. Kelly* and *Messrs. Pope & Garlington,* for Respondents, submitted a brief; *Mr. J. C. Garlington* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiffs, as resident taxpayers of Beaverhead county, brought this suit against the defendants as county commissioners thereof, seeking to enjoin them from selling refunding bonds in the sum of $11,100.

At the time of the commencement of this action, the defendants proposed to retire outstanding warrants of Beaverhead county in the sum of $61,681.57 by the issuance and sale of refunding bonds. Plaintiffs alleged in their complaint, in effect, that certain of these warrants aggregating the sum of $11,100 were illegal and invalid. These warrants were issued in August, 1932, to the Westmont Tractor Company, in payment of three "Caterpillar Auto Patrols." The war-

rants were presented to the county treasurer for payment, and registered on August 10, 1932. Plaintiffs alleged that the indebtedness evidenced by these warrants was incurred under an entire and indivisible contract, and that the question of incurring this indebtedness was never approved by a majority of the electors of the county, nor was the proposition submitted to the electorate. They alleged that, by reason of the failure to submit the question of incurring this indebtedness to the electorate, the indebtedness and warrants issued in payment thereof are invalid and void.

Defendants by their answer admitted that the warrants were issued in payment of the auto patrols purchased by the county, the registration of the warrants and that the proposition of incurring the indebtedness was never submitted to the electors of the county. They denied, however, that the contract for the purchase was an entire and indivisible contract, and denied that the indebtedness and warrants are invalid. Trial was had before the court sitting without a jury.

The evidence disclosed that in the year 1931 a salesman of the Westmont Tractor & Equipment Company delivered to the defendants the three auto patrols on trial. The deliveries were made on two different occasions. The commissioners made use of the patrols at various times during the forepart of the year 1932. Thereafter, in the month of August, a claim was presented to the board of county commissioners by the tractor company for three caterpillar auto patrols fully equipped, for $3,850 each, making a total of $11,550, less three caterpillar snowplows, at $150 each, making a total deduction of $450. The amount of the bill as thus rendered was $11,100. This bill was approved August 1, 1932, and warrants were issued in payment.

Beaverhead county has some 1,200 miles of road. The commissioners testified that the county was divided into three road districts, conforming to the boundaries of the county commissioner districts from which each county commissioner was elected. Under the supervision of the board, each commissioner had charge of the road work within his own district.

It was testified that it was the plan of the board that one of these auto road patrols was for use in maintaining the roads in each district, although no formal assignment of the patrols to any particular district was ever made by the board. Each member of the board, after they were received, took one of the patrols, and since then the patrol so taken by each commissioner has, with one exception, been used in maintaining the roads in that commissioner's district. Testimony was offered showing the necessity of securing these patrols in order properly to maintain the roads of the county.

Following the trial, findings of fact were made to the effect that the purchase of these auto patrols did not constitute a single purpose, within the meaning and scope of section 5 of Article XIII of the state Constitution. Numerous other findings were made, and also a conclusion of law to the effect that the warrants represented a legal and valid indebtedness. Judgment was thereafter rendered dismissing the action. The appeal is from the judgment.

By appropriate specifications of error the correctness of the court's finding and conclusion that the purchase of the road patrols did not constitute a single purpose within the meaning of section 5 of Article XIII of the Constitution is challenged. The pertinent portion of the section provides: ''No county shall incur any indebtedness or liability for any single purpose to an amount exceeding ten thousand dollars ($10,000) without the approval of a majority of the electors thereof.''

If the purchase of these patrols constituted a single purpose within the meaning of this constitutional provision, then the board of commissioners was without authority to purchase them; the indebtedness created, as well as the warrants issued in payment thereof, was illegal, invalid and void. This constitutional provision has been involved in numerous cases before this court.

The words ''single purpose'' employed in this constitutional prohibition have specific reference to ''one object, project, or proposition—a unit isolated from all others. In other

words, to constitute a single purpose, the elements which enter into it must be so related that, when combined, they constitute an entity; something complete in itself, but separate and apart from other objects." (*State ex rel. Turner* v. *Patch,* 64 Mont. 565, 210 Pac. 748, 750; *Bennett* v. *Petroleum County,* 87 Mont. 436, 288 Pac. 1018.)

By the provisions of Chapter 59, Laws of 1929, the board of ██ county commissioners "have general supervision over the highways within their respective counties. 1. They may, in their discretion, keep the county divided into suitable road districts, place each of said road districts in charge of a competent road supervisor, and order and direct each of such supervisors concerning the work to be done upon the public highway in his district. * * * 3. They must cause to be surveyed, viewed, laid out, recorded, opened, worked, and maintained such highways as are necessary for public convenience as in this Act provided. * * * " Thus it will be seen that the board of county commissioners have not only the authority, but the duty, to maintain and work the roads within their county.

The acquiring of a courthouse site, the preparation of plans for the courthouse, and its construction constitute a single purpose. (*Hefferlin* v. *Chambers,* 16 Mont. 349, 40 Pac. 787.) The borrowing of money in various sums, aggregating an amount in excess of $10,000, on the same day for the use of the county, by the issuance of warrants any one of which was less than $10,000 in amount, is within the constitutional prohibition. (*Hoffman* v. *Gallatin County,* 18 Mont. 224, 44 Pac. 973.) The building of a bridge over a river and its approaches is a single purpose. (*Jenkins* v. *Newman,* 39 Mont. 77, 101 Pac. 625.) The incurring of an indebtedness to secure seed grain for distribution among needy drought-stricken farmers is likewise a single purpose. (*State ex rel. Cryderman* v. *Wienrich,* 54 Mont. 390, 170 Pac. 942.) The building of a county high school building out of the proceeds of a tax levy and costing in excess of $10,000 is within the

constitutional prohibition. (*Panchot* v. *Leet,* 50 Mont. 314, 146 Pac. 927.)

In the case of *State ex rel. Turner* v. *Patch,* supra, the board of county commissioners during a period of two years and a half had procured work and labor to be done and materials furnished in the construction, repair, improvement and maintenance of the roads and bridges in Roosevelt county, in payment of which the county had issued warrants aggregating $113,000. It was there sought, as here, to prevent by injunction the refunding of the warrants issued, on the theory that the work done for which the warrants were issued was a single purpose within the meaning of the Constitution. No one contract or piece of work done exceeded the sum of $6,000. It was there held that the construction and maintenance of roads by the county commissioners did not constitute a single purpose within the constitutional prohibition here under consideration.

It will be noted that, in all of our cases wherein an expenditure was condemned, it was founded on a liability for a single occasional purpose, as the building of a courthouse, the borrowing of money for immediate needs, the bridging of a river and the building of a county high school. Here we have an expenditure founded on a duty expressly imposed by law to meet an ever-present condition encountered in the regular and normal functioning of the county. Such were the facts in the case before the court in *State ex rel. Turner* v. *Patch,* supra.

The mere fact, however, that a duty is made compulsory by mere legislation, or that the legislature has attempted to absolve any public agency from the restriction of the Constitution, does not relieve the situation, for the Constitution is to be read into every statute by which a duty is imposed upon a public agency; and, if the duty is to do a thing which cannot be done without first obtaining the consent of the electors, then, manifestly, it becomes a part of the duty to secure such consent. (*Panchot* v. *Leet,* supra.)

The facts that the patrols in question here were purchased from one firm and paid for on one day is not controlling

or decisive, for, if such were the case, the commissioners could avoid the force of the Constitution by purchasing this equipment from different persons or firms on different days; but such artificial division of a project is unavailing to avoid the constitutional prohibition. (*Hefferlin* v. *Chambers,* supra; *Jenkins* v. *Newman,* supra; *State ex rel. Turner* v. *Patch,* supra.)

Since the repair and maintenance of the roads of a county do not constitute a single purpose within the meaning of the constitutional provision (*State ex rel. Turner* v. *Patch,* supra), the purchase of machinery for use upon all the roads of a county in repairing and maintaining them is not the expenditure of funds for a single purpose. The trial court was not in error in its findings, conclusions and judgment.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and STEWART concur.

MR. JUSTICE ANGSTMAN, being absent, takes no part in the foregoing opinion.

HILL, RESPONDENT, *v.* CHAPPEL BROTHERS OF MONTANA, INC., APPELLANT.

(No. 7,263.)

(Submitted June 4, 1934. Decided June 23, 1934.)

[33 Pac. (2d) 819.]

306

Mr. *D. L. O'Hern* and Mr. *Harry L. Burns,* for Appellant, submitted a brief; Mr. *Burns* argued the cause orally.

*Mr. W. B. Sands* and *Mr. Max P. Kuhr,* for Respondent, submitted a brief and argued the cause orally.

310

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Chappel Bros., Inc., a corporation, has appealed from a judgment against it and in favor of the plaintiff, William S. Hill, for damages suffered by reason of horses belonging to the defendant trespassing upon certain leased lands lying within the Fort Belknap Indian Reservation.

The judgment is on two actions united for the purpose of the trial. The first action is upon five causes of action for trespass upon land leased by the plaintiff and four other leasers, who assigned their rights of action to the plaintiff, in the years 1929, 1930 and 1931. The second action is for like damages for trespass up to May, 1932. The plaintiff and his assignors held approximately 200,000 acres of Indian lands on the Fort Belknap Reservation, under lease for the running of sheep; the defendant, approximately 120,000 acres to the south of the leases described in the complaints for the running of horses. The complaints allege that defendant's lease was sufficient to support not to exceed 3,000 head of horses, but was overstocked by placing thereon approximately 8,000 head, and, as a result, the horses were forced to seek sustenance off of their proper range, and did so by ranging upon the sheep leases.

The causes were once tried, resulting in a judgment in favor of the plaintiff for a lump sum of $15,000, but the judgment was reversed on appeal on the ground that improper testimony was admitted, over objection, on a minor issue in the case, and that, as to three of the causes of action, the plaintiff failed to prove the value of the sheep range destroyed and, as to them, was entitled to but nominal damages, and therefore the lump sum verdict and judgment could not stand. (*Hill* v. *Chappel Bros.*, 93 Mont. 92, 18 Pac. (2d) 1106, 1110.) On the new trial granted the objectionable testimony was elimi-

nated, and proof was adduced as to the damage done on each of the leases described in the complaints. This proof consisted of evidence as to the value of the grass on each of the leases for each year, an estimate of the per cent. of grass consumed by trespassing horses, and the percentage of such horses that belonged to the defendant, determined by the brands thereon. This method of proof is in accord with approved practice, permitting the jury to make their best possible estimate and to award damages accordingly. (*Hill* v. *Chappel Brothers*, above.)

The verdict was for $16,000 actual, and $2,000 exemplary, damages. The amount awarded as actual damages is large, but, when we consider that the trespass extended over 200,000 acres of grazing lands on which the leasers paid an annual rental of approximately $23,000, and that there is credible evidence to the effect that horses consumed from 25 to 50 per cent. of the grass, valued at the rental cost, three years in succession, and from 15 to 20 per cent. of the grass crop for the fourth year, and that from 75 to 80 per cent. of these horses belonged to the defendant, we find that the substantial evidence in the case will warrant any verdict up to approximately $20,000.

The defendant asserts that plaintiff was not entitled to exemplary damages, and predicates error upon the court's instructing the jury on the subject and its refusal to instruct the jury that the evidence was insufficient to justify such award. This question was raised on the former appeal and determined adversely to the contention of the defendant. The ruling became the law of the case and is controlling on this appeal, whether right or wrong (*Anderson* v. *Border*, 87 Mont. 4, 285 Pac. 174; *Skillen* v. *Harris*, 90 Mont. 389, 3 Pac. (2d) 1054), providing the evidence is as strong in the present record as it was in the former record. Comparing the two records, we find the evidence to the effect that employees of the defendant knowingly drove horses upon the Hill and Miller leases even stronger than it was on the first trial, and, as against this challenge, the judgment must be sustained.

Six of defendant's specifications of error are on the court's action in giving four instructions on the proof necessary to warrant a verdict in favor of the plaintiff and against the defendant and its refusal to give two offered instructions on that subject. Comparison of the two records discloses that the instructions as given and refused are but copies of instructions given and refused on the former trial and which were the subjects of specifications of error, as here; they were disposed of on the former appeal by the final declaration in the opinion that "We deem assignments of error not covered by anything we have said of no importance." Again the "law of the case" bars consideration of these assignments. (*Altermatt* v. *Rocky Mt. Fire Ins. Co.*, 89 Mont. 153, 295 Pac. 327.)

The defendant challenges the statement in the former opinion that "the duty of alleging and proving that some of the horses strayed * * * under the natural urge to travel and not because they needed food devolved upon the defendant," and insists that the rule laid down in *Schreiner* v. *Deep Creek Stock Assn.*, 68 Mont. 104, 217 Pac. 663, should be applied.

Conceding the application of the rule declared that "under the 'legal fence law' privately owned premises must be fenced * * * in order to enable the owner to maintain an action for damages for trespass by livestock of another, unless (1) the trespassing animal is prohibited by statute from running at large, or (2) the trespassing animal has been placed or caused to be placed thereon by the owner of the animal with knowledge that the land is not open public domain," this court by the former opinion herein properly added thereto the qualification that "fence laws do not furnish immunity to one who, in disregard of property rights, turns loose his cattle under circumstances showing that they were intended to graze upon the land of another," and held that, "where one stocks his own land with a greater number of horses than it can properly support, so that in order to sustain life * * *

they are forced to pasture on the lands of others," it is as if "they were driven thereon in the first instance."

In the first opinion it is held that the plaintiff made out a prima facie case of overstocking; the evidence on which this court so held was repeated, with additions, on the second trial. One witness testified that the defendant's lease "looked like fire had been over it"; another that "horses could not live there in 1930 and 1931; there was not any feed there for them." There is therefore substantial evidence in the record that the horse leases were overstocked, and, although the defendant did introduce credible evidence to the contrary, it but created a conflict resolved by the jury in favor of the plaintiff and cannot effect a reversal of the judgment.

While many of defendant's horses were purchased from Indians owning land within the sheep leases, the fact cannot aid the defendant if, in fact, they returned to their former range at a time when there was little or no feed on the lands to which they had been taken. On the record the declaration that the burden of showing that some of the horses returned to their former range from habit—as, for example, proof that these Indian horses returned to their former range before the grass was depleted on defendant's lease—was upon the defendant is correct; it would be in the nature of reducing the amount of acknowledged damage.

As a part of plaintiff's proof there was read to the jury the deposition of M. B. Clark, superintendent of the Fort Belknap Agency, as to what he observed on a four-day survey of the reservation made in November, 1930. Objection was made to the following statement being read to the jury, on the ground that it was a "conclusion and opinion of the witness": "It was noticed during this entire survey that the range was short and there was considerable evidence of trespassing horses, judging by the droppings that were seen here and there on the range. At the time of the survey, water seemed to be scarce on most of the range and it was noted that on the Kuhr range, water was unusually scarce and grass and other vegetation was short. In fact, the entire survey

showed that the range was short and"—here the defendant interposed the following objection: "We desire to object to the balance of the sentence for the reason that there has been no foundation laid for the same and it is a conclusion and opinion of the witness." The objection was overruled, and the reading of the statement continued—"and considerable evidence of trespassing horses was observed throughout the range."

The specifications of error in the admission of this testimony contain other portions of the statement of the witness, but, as to these, no objection was interposed, and the last objection, quoted above, clearly related only to "the balance of the sentence" as quoted thereafter. Further, the objection that "there has been no foundation laid" was directed only to the final statement, the only necessary foundation for which was that the witness had been on the ground, and does not warrant the argument that the witness was not properly qualified to express his opinion as to the condition of the range. The deposition, however, discloses that Clark was superintendent during the period of the alleged trespasses, charged with the duty of seeing that the leasers complied with the conditions of their leases. The vice of the expression "water *seemed* to be scarce," if vice it was, is negligible.

Counsel contend that the particular vice of the statement is in the use of the word "trespassing," as the question as to whether or not defendant's horses trespassed on the sheep ranges was for the jury.

Conceding that it is error to permit a witness to state his conclusion as to an ultimate fact which is for the jury's determination on the evidence (*Hamilton* v. *Monidah Trust,* 39 Mont. 269, 102 Pac. 335; *Demarais* v. *Johnson,* 90 Mont. 366, 3 Pac. (2d) 283, 77 A. L. R. 553), a judgment will not be reversed for harmless error, and, whether a particular error shall be classed as harmful or harmless depends upon the peculiar facts and circumstances in the particular case under review. (*State* v. *Diedtman,* 58 Mont. 13, 190 Pac. 117; *Fowlie* v. *Cruse,* 52 Mont. 222, 157 Pac. 958.)

While the answer denied the allegations of trespass, the testimony on behalf of both the plaintiff and the defendant placed the matter outside the controversial questions for determination. The theory on which the case was defended was that, conceding that certain of defendant's horses strayed to and upon the sheep leases, it was not liable in the circumstances shown.

Prior to the reading of Clark's deposition, voluminous testimony was adduced concerning trespassing horses and the percentage bearing defendant's brand, and, just prior to making the objectionable statement, Clark had testified that he had counted 304 horses bearing such brand on the sheep leases. Defendant's employees did not deny that horses belonging to the defendant strayed from his leases and onto the sheep leases, and told of the employment of men to drive any such back when found. Of course any of defendant's horses found on the sheep leases were "trespassing" horses.

In the light of the facts and circumstances of the case, permitting the witness to use the term "trespassing" in the manner in which he used it was not prejudicial to the substantial rights of the defendant, and constituted harmless error. (*Town of Meeker* v. *Fairfield,* 25 Colo. App. 187, 136 Pac. 471.)

Finding no reversible error in the record, the judgment must be, and is, affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STEWART and ANDERSON concur.

MR. JUSTICE ANGSTMAN, being absent, takes no part in the above opinion.

Rehearing denied July 6, 1934.